# 24-10563-H

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

———————————

### FANNIE WRIGHT,

**Petitioner-Appellant**

### v.

### COMMISSIONER OF INTERNAL REVENUE,

**Respondent-Appellee**

———————————

## ON APPEAL FROM THE DECISION
## OF THE UNITED STATES TAX COURT

———————————

## BRIEF FOR THE APPELLEE

———————————

DAVID A. HUBBERT
  *Deputy Assistant Attorney General*

JACOB EARL CHRISTENSEN          (202) 307-0878
BETHANY B. HAUSER               (202) 514-2830
  *Attorneys*
  *Tax Division*
  *Department of Justice*
  *Post Office Box 502*
  *Washington, D.C. 20044*

*Fannie Wright v. Commissioner of Internal Revenue*
**(11th Cir. – No. 24-10563-H)**

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

C-1 of 2

Pursuant to Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rule 26.1-1, counsel for the Commissioner hereby certify that, to the best of their knowledge, information, and belief, the following persons and entities have an interest in the outcome of this appeal:

Christensen, Jacob Earl, Attorney, Appellate Section, Tax Division, United States Department of Justice

Commissioner of Internal Revenue, Respondent-Appellee

Desmond, Michael J., Attorney, IRS Office of Chief Counsel

Dillard, Robert W., Attorney, IRS Office of Chief Counsel

DiRuzzo, Joesph A., III, Attorney for the Appellant

Gale, Joseph H., Judge, United States Tax Court

Hauser, Bethany B., Attorney, Appellate Section, Tax Division, United States Department of Justice

Hendrickson, Stone T., Attorney for the Appellant

Lader, Daniel M., Attorney for the Appellant

15256054.1

*Fannie Wright v. Commissioner of Internal Revenue*
**(11th Cir. – No. 24-10563-H)**

**CERTIFICATE OF INTERESTED PERSONS AND
CORPORATE DISCLOSURE STATEMENT**

C-2 of 2

Munce, Daniel C., Attorney, IRS Office of Chief Counsel

Paul, William M., IRS Chief Counsel

Richman, Derek, Attorney, IRS Office of Chief Counsel

Rollinson, Marjorie A., Attorney, IRS Office of Chief Counsel

Spires, Joseph W., Attorney, IRS Office of Chief Counsel

Ugolini, Francesca, Chief, Appellate Section, Tax Division,

    United States Department of Justice

Wright, Fannie, Petitioner-Appellant


    Counsel certifies that, to the best of their knowledge, no publicly

traded company or corporation has an interest in the outcome of this

case or appeal.

15256054.1

-i-

# STATEMENT REGARDING ORAL ARGUMENT

Pursuant to 11th Cir. R. 28-1(c) and Fed. R. App. P. 34(a), counsel for the Commissioner respectfully inform this Court that because taxpayer raises issues concerning the removability of Tax Court judges, counsel for the Commissioner agree with appellant that oral argument may be of assistance to this Court.

-ii-

# TABLE OF CONTENTS

**Page**

Certificate of Interested Persons and

    Corporate Disclosure Statement ................................................... C-1

Statement regarding oral argument.............................................................i

Table of contents......................................................................................ii

Table of citations ....................................................................................x

Statement of jurisdiction.........................................................................xx

    1.    Jurisdiction in the Tax Court.......................................xx

    2.    Jurisdiction in the Court of Appeals............................xx

Statement of the issues .............................................................................1

Statement of the case ...............................................................................2

    (i)    Course of proceedings and disposition in the court

        below...............................................................................2

    (ii)    Statement of the facts....................................................3

15256054.1

**Page**

1.    Underlying facts ...................................................... 3

2.    Administrative proceedings ................................. 5

3.    Tax Court proceedings ........................................... 5

(iii)  Standard and scope of review ........................................ 7

Summary of argument ........................................................... 7

Argument ................................................................................ 10

I.    Taxpayer is not entitled to relief based on her
arguments regarding the President's limited power to
remove Tax Court judges ....................................................... 11

A.    Taxpayer has not alleged she suffered any harm
based on the removal provision she contests, as
would be required to obtain relief ................................ 11

B.    Where no relief can be granted, this Court need
not reach academic questions regarding the
Constitution ................................................................. 16

15256054.1

**Page**

II.   Because the Tax Court exercises limited executive

power, both the President's power to remove Tax Court

judges and the limitations on that power are consistent

with the constitutional separation of powers ....................... 18

   A.   The Tax Court, in general ........................................... 18

      1.   Taxation and the tripartite division of power .... 18

      2.   The history of the Tax Court .............................. 20

      3.   Other key features of the Tax Court ................... 24

   B.   The President's power to remove Tax Court judges

      does not violate the separation of powers because

      the Tax Court exercises executive power, albeit in

      judicial form ................................................................. 26

      1.   The Tax Court exercises executive power .......... 26

15256054.1

**Page**

a.    The Tax Court cannot exercise

legislative power within the meaning of

Article I ........................................................26

b.    The Tax Court cannot exercise judicial

power within the meaning of Article III....28

c.    The matters decided by the Tax Court

are prototypical matters of "public

right" that may, consistent with the

Constitution, be assigned to the

Executive Branch ........................................31

2.    Because Tax Court judges exercise executive

power, taxpayer's arguments that the

President's power to remove Tax Court

judges violates the separation of powers are

fundamentally misconceived ...............................35

15256054.1

**Page**

a.     The President's removal powers over executive officers cannot violate the separation of powers...................................35

b.     The cases taxpayer relies upon do not support her position ...................................38

c.     Taxpayer's dispute with the text of *Battat* is beside the point ...........................40

C.     The limitations on the President's power to remove Tax Court judges are also constitutional....................42

1.     Introduction .........................................................42

2.     The Tax Court is a multimember expert body ... 44

3.     The Tax Court acts only through adjudication..........................................................45

4.     The President retains responsibility for the prompt collection of the revenues ......................48

-vii-

**Page**

III.    The Tax Court was not obliged to decide whether the

joint returns filed for taxpayer's 2013, 2014, and 2015

tax years were valid .............................................................50

A.    Relief from joint and several liability under I.R.C.

§ 6015, in general ...........................................................50

B.    The Tax Court properly denied relief because the

unpaid tax is tax imposed by Congress on

taxpayer's own income................................................53

C.    Taxpayer's arguments to the contrary are

misconceived ...............................................................57

1.    Taxpayer's liability for tax stems from the

Tax Code, not from the filing of a joint return...57

2.    Taxpayer's reliance on the Revenue

Procedure is misplaced.......................................60

3.    The Tax Court cases upon which taxpayer

relies are distinguishable ...................................62

15256054.1

-viii-

**Page**

Conclusion..........................................................................65

Certificate of compliance ................................................66

Addendum ..........................................................................67

    § 6015. Relief from joint and several liability on joint return.......67

    § 6212. Notice of deficiency .............................................73

    § 6213. Restrictions applicable to deficiencies; petition to Tax

    Court ...........................................................................73

    § 6214. Determinations by Tax Court .............................74

    § 7441. Status ....................................................................74

    § 7442. Jurisdiction .........................................................74

    § 7443. Membership .........................................................75

    § 7444. Organization ........................................................76

    § 7447. Retirement ...........................................................76

15256054.1

**Page**

§ 7452. Representation of parties ....................................................76

§ 7453. Rules of practice, procedure, and evidence.......................77

§ 7482. Courts of review ...................................................................77

§ 7485. Bond to stay assessment and collection ...........................77

15256054.1

-x-

# TABLE OF CITATIONS

**Cases:**                                                                      **Page(s)**

*Abdelhadi v. Commissioner*, T.C. Memo. 2018-183 ............................ 6

*ABKCO Indus., Inc. v. Commissioner*,

     482 F.2d 150 (3d Cir. 1973) ............................................................ 28

*Ex parte Bakelite Corp.*, 279 U.S. 438 (1929) ........................ 45-46, 48

*Battat v. Commissioner*, 148 T.C. 32 (2017) .......................... 23, 40-42

*Benzvi v. Commissioner*, 787 F.2d 1541 (11th Cir. 1986) ................ 25

*Block v. Commissioner*, 120 T.C. 62 (2003) .................................. 61-62

*Boss Cap., Inc. v. City of Casselberry*, 187 F.3d 1251

     (11th Cir. 1999) ................................................................................ 16

*Bowsher v. Synar*, 478 U.S. 714 (1986) ........................................ 37-39

*Bull v. United States*, 295 U.S. 247 (1935) ................................. 19, 48

*Burns v. Town of Palm Beach*,

     999 F.3d 1317 (11th Cir. 2021) ..................................................... 16

*Byers v. United States Tax Court*,

     211 F. Supp. 3d 240 (D.D.C. 2016) .............................................. 24

-xi-

**Cases (cont'd):**                                                    **Page(s)**

*Calcutt v. Fed. Deposit Ins. Corp.*, 37 F.4th 293

    (6th Cir. 2022) .................................................................17

*City of Arlington, Tex. v. F.C.C.*, 569 U.S. 290 (2013) .......................30

*Cmty. Fin. Servs. Ass'n of Am., Ltd. v. Consumer Fin.*

    *Prot. Bureau*, 51 F.4th 616, 633 (5th Cir. 2022) ..........................17

\*   *Collins v. Yellen*, 594 U.S. 220 (2021) ...............................11-15, 17, 43

*Commissioner v. Neal*, 557 F.3d 1262 (11th Cir. 2009)................7, 59

*Consumer Fin. Prot. Bureau v. L. Offs. of Crystal*

    *Moroney, P.C.*, 63 F.4th 174 (2d Cir. 2023) ..................................17

*Crim v. Commissioner*, 66 F.4th 999 (D.C. Cir. 2023).................23-24

*Crowell v. Benson*, 285 U.S. 22 (1932) .........................................44-45

*Decker Coal Co. v. Pehringer*,

    8 F.4th 1123 (9th Cir. 2021).........................................................18

*Dep't of Transp. v. Ass'n of Am. R.R.*, 575 U.S. 43 (2015) .................24

    \* Cases or authorities chiefly relied upon have asterisks.

15256054.1

## Cases (cont'd):                                                       Page(s)

\* *Flora v. United States*, 362 U.S. 145 (1960) ................ 19-20, 34-35, 49

   *Fort Lauderdale Food Not Bombs v. City of Fort*

      *Lauderdale*, 11 F.4th 1266 (11th Cir. 2021) ........................... 16, 18

   *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*,

      561 U.S. 477 (2010) ........................................................ 42-43, 48

\* *Freytag v. Commissioner*, 501 U.S. 868 (1991) .......... 29-30, 45-46, 48

   *G.M. Leasing Corp. v. United States*, 429 U.S. 338 (1977) .............. 48

   *Groves v. Commissioner*, T.C. Memo. 1957-196,

      1957 WL 810 (1957) ...................................................................... 63

\* *Humphrey's Executor v. United States*,

      295 U.S. 602 (1935) ............................................................... 43, 48

   *I.N.S. v. Chadha*, 462 U.S. 919 (1983) ...................................... 26, 39

   *Jones v. Commissioner*, T.C. Memo. 2019-139 (2019) ................. 63-64

   *Kaufmann v. Kijakazi*, 32 F.4th 843 (9th Cir. 2022) ........................ 18

\* *Kuretski v. Commissioner*, 755 F.3d 929 (D.C. Cir. 2014) ........... 22-23,

                                         27, 30-33, 35-38, 40-41

\* Cases or authorities chiefly relied upon have asterisks.

## Cases (cont'd):                                                    Page(s)

*Leachco, Inc. v. Consumer Prod. Safety Comm'n*,

    103 F.4th 748 (10th Cir. 2024).....................................................18

*Lee Eng'g Supply Co. v. Commissioner*,

    101 T.C. 189 (1993)........................................................................55

*Lyng v. Northwest Indian Cemetery Protective Ass'n*,

    485 U.S. 349 (1988) .......................................................................16

*McAllister v. United States*, 141 U.S. 174 (1891) ..................36, 38-40

*Mistretta v. United States*, 488 U.S. 361 (1989) ..........................36-40

*Morrison v. Olson*, 487 U.S. 654 (1988) .......................................38-39

\*   *Murray's Lessee v. Hoboken Land & Improvement Co.*,

    59 U.S. 272 (1856) .....................................19, 30, 32, 34, 46, 49-50

*N. Pipeline Const. Co. v. Marathon Pipe Line Co.*,

    458 U.S. 50 (1982) ..................................................................28, 31

*Phillips v. Commissioner*, 283 U.S. 589 (1931)..................................49

*Polselli v. IRS*, 598 U.S. 432 (2023) ...................................................58

*Pullins v. Commissioner*, 136 T.C. 432 (2011)...................................55


\* Cases or authorities chiefly relied upon have asterisks.

**Cases (cont'd):**                                                        **Page(s)**

*S.C. State Ports Auth. v. Fed. Mar. Comm'n*, 243 F.3d

    165 (4th Cir. 2001) .........................................................................30

*Samuels, Kramer & Co. v. Commissioner*, 930 F.2d 975

    (2d Cir. 1991) ..............................................................................32

*Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678

    (11th Cir. 2014)...........................................................................15

*SEC v. Jarkesy*, 144 S. Ct. 2117 (2024)...................................28, 32-33

*Seila L. LLC v. Consumer Fin. Prot. Bureau*,

    591 U.S. 197 (2020) ...............................................15, 17, 36, 43-44

*Shahar v. Bowers*, 114 F.3d 1097 (11th Cir. 1997)...........................17

*Shurtleff v. United States*, 189 U.S. 311 (1903)................................40

*Sleeth v. Commissioner*,

    991 F.3d 1201 (11th Cir. 2021) ...............................7, 44, 50-51, 55

*Snyder v. Commissioner*,

    T.C. Memo. 1983-751, 1983 WL 14739 (1983) ........................62-63

*Sonnenborn v. Commissioner*, 57 T.C. 373 (1971)............................51

*Springer v. United States*, 102 U.S. 586 (1881) ................................49

**Cases (cont'd):**                                                            **Page(s)**

*Stern v. Marshall*, 564 U.S. 462 (2011) ................................... 29, 31-33

*Stubbs, Overbeck & Assocs., Inc. v. United States*,

    445 F.2d 1142 (5th Cir. 1971) ....................................................... 55

*Thompson v. Commissioner*, 148 T.C. 59 (2017) ............................... 41

*Transamerica Leasing, Inc. v. Inst. of London*

    *Underwriters*, 430 F.3d 1326 (11th Cir. 2005) ............................ 60

*United States v. Zugar*, 602 F. Supp. 889 (D. Conn.

    1984), *aff'd*, 755 F.2d 915 (2d Cir. 1985) ..................................... 14

\* *Wiener v. United States*, 357 U.S. 349 (1958) ................................... 44

**Constitution of the United States**

Appointments Clause, Art. II, § 2 ................................................ 11, 48

Article I............................................. 8, 21, 26-27, 29, 34, 36-38, 40-41

Art. I, sec. 8, cl. 1......................................................... 19, 45, 47-48, 50

Art. II, § 3 ................................................................................... 42

Article III ......................... 8, 14, 19, 22-23, 27-31, 34, 36, 39, 42, 47, 50

Art. III sec. 1.................................................................................. 28

Article IV ....................................................................................... 40

**Statutes:**                                                                                                                          **Page(s)**

Internal Revenue Code of 1986 (26 U.S.C.):

§ 1 ....................................................................3, 50-51, 58

§ 2 ..........................................................................................58

§ 61 ......................................................................................3, 58

§ 63 ......................................................................................3, 58

§ 86 ...............................................................................3, 58, 60

§ 6012 .......................................................................................3

§ 6013 ......................................................................xx, 50-51

\*      § 6015 ...................................... xx, 1-2, 6-7, 10, 25, 46, 50-56, 59-63

§ 6201 ....................................................................................19

§ 6211 ....................................................................................25

§ 6212 ................................................................................4, 25

§ 6213 .........................................................................4, 25, 46

§ 6214 ....................................................................................47

§ 6301 ....................................................................................19

§ 6330 ....................................................................................46

§ 6501 ....................................................................................59

\* Cases or authorities chiefly relied upon have asterisks.

| **Statutes (cont'd):** | **Page(s)** |
|---|---|

Internal Revenue Code of 1986 (26 U.S.C.) (cont'd):

§ 6651 ............................................................... 59

§ 7428 ............................................................... 46

§ 7441 .......................................... 21, 23-24, 26, 29

§ 7442 ................................................ xx, 22, 24, 44

\*     § 7443 .............................. 10, 12-13, 22, 28, 37, 43-44, 49

§ 7444 ............................................................... 44

§ 7447 ............................................................... 45

§ 7452 ............................................................... 47

§ 7453 ............................................................... 25

§ 7456 ............................................................... 22

§ 7482 ................................................ xxi, 26, 28, 44

§ 7483 ............................................................... xxi

§ 7485 ............................................................... 50


28 U.S.C. § 1346 ............................................... 19


\* Cases or authorities chiefly relied upon have asterisks.

## Statutes (cont'd):                                    Page(s)

Act of July 9, 1798, ch. 70, 1 Stat. 580 ................................................ 19

Consolidated Appropriations Act of 2016, Pub. L. No.

    114-113, Div. Q, Title IV, 129 Stat. 2242

    (Dec. 18, 2015) ................................................................ 23

Revenue Act of 1924, ch. 234, 43 Stat. 253 .................................. 20-21

Revenue Act of 1926, ch. 27, § 1000, 44 Stat. 9 ...................... 20-22, 27

Revenue Act of 1942, ch. 619, 56 Stat. 798 ........................................ 21

Tax Reform Act of 1969, Pub. L. No. 91-172, 83 Stat. 487 ........... 21-22

## Miscellaneous:

Bickford, *Court Procedure in Federal*

    *Tax Cases* 119 (Rev. ed. 1929) ........................................................ 35

Federal Rule of Appellate Procedure 13 .......................................... xxi

Revenue Procedure 2013-34, 2013-43

    I.R.B. 397 (2013) ............................................... 55-56, 60-61

S. Rep. No. 114-14 ............................................................................. 24

Tax Court Rule of Practice and Procedure 155 ................................. 60

-xix-

**Miscellaneous (cont'd):**                                         **Page(s)**

United States Tax Court, Congressional Budget

Justification for FY 2025 (available online at

FY_2025_Congressional_Budget_Justification.pdf

(ustaxcourt.gov)). ......................................................................24-25

15256054.1

-xx-

## STATEMENT OF JURISDICTION

### 1.    Jurisdiction in the Tax Court

On August 6, 2018, the Commissioner issued a notice of final determination to taxpayer-appellant Fannie Wright, denying her request for relief from joint and several liability for her 2013, 2014, and 2015 tax years.  (Doc. 1 at 5.)[1]  *See* Internal Revenue Code ("I.R.C.") (26 U.S.C.) §§ 6013(e) (imposing joint and several liability on joint filers), 6015 (relief from joint and several liability).  On October 31, 2018, taxpayer filed a timely petition for review in the United States Tax Court.  (Doc. 1 at 1.)  *See* I.R.C. § 6015(e)(1)(A)(ii).  The Tax Court had jurisdiction pursuant to I.R.C. §§ 6015(e)(1) and 7442.

### 2.    Jurisdiction in the Court of Appeals

On December 27, 2023, the Tax Court entered a decision determining that taxpayer was not entitled to relief from joint and several liability.  (Doc. 64.)  The Tax Court's decision is a final,

---

[1] "Doc." refers to the documents contained in the record on appeal, as numbered by the clerk of the Tax Court.  "Ex." refers to the exhibits attached to the joint stipulation of facts (Doc. 41); exhibit page numbers refer to the Bates-stamp numbers that appear in the lower right corner of those pages.  "Tr." refers to the pages of the Tax Court transcript (Doc. 45).  "Br." refers to appellant's opening brief.

-xxi-

appealable order disposing of all claims of all parties. Taxpayer filed a timely notice of appeal to this Court on February 20, 2024. (Doc. 65.) *See* I.R.C. § 7483; Fed. R. App. P. 13(a)(1)(A). This Court has jurisdiction over the appeal pursuant to I.R.C. § 7482(a)(1).

**IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT**

————————————

**No. 24-10563-H**

**FANNIE WRIGHT,**

**Petitioner-Appellant**

**v.**

**COMMISSIONER OF INTERNAL REVENUE,**

**Respondent-Appellee**

————————————

**ON APPEAL FROM THE DECISION
OF THE UNITED STATES TAX COURT**

————————————

**BRIEF FOR THE APPELLEE**

————————————

**STATEMENT OF THE ISSUES**

Taxpayer initiated this Tax Court proceeding seeking relief from joint and several liability under I.R.C. § 6015 for her 2013, 2014, and 2015 tax years.  After a trial, the Tax Court denied relief because the taxes from which taxpayer seeks relief were imposed by Congress on her own income.  Taxpayer appeals.

15256054.1

This appeal presents the following issues:

1.  Whether both the President's power to remove Tax Court judges and the statutory restrictions on that power are consistent with the constitutional separation of powers.

2.  Whether this Court should even reach taxpayer's constitutional arguments, given that taxpayer has not alleged that either the President's removal power or the restrictions on that power have caused her compensable harm.

3.  Whether the Tax Court was required to determine the validity of the joint tax returns before denying relief under I.R.C. § 6015.

## STATEMENT OF THE CASE

### (i)    Course of proceedings and disposition in the court below

Taxpayer filed an administrative request for relief from joint and several liability under I.R.C. § 6015.  She received a notice of final determination from the IRS rejecting her request and timely petitioned the Tax Court for review of her claim.  *See* I.R.C. § 6015(e).  After conducting a trial, the Tax Court denied that relief.  Taxpayer appeals.

-3-

### (ii)    Statement of the facts

### 1.    Underlying facts

Taxpayer received Social Security income in the years 2013, 2014, and 2015, in the amounts of $18,881, $17,723, and $18,023, respectively.  (Doc. 41 at 6-7.)  A portion of Social Security income is includable in gross income, and thus subject to tax, pursuant to the formula adopted by Congress.  *See* I.R.C. §§ 1, 61, 63, 86.  On the facts of this case, a portion of taxpayer's Social Security income would have been includable in gross income, and that gross income would have exceeded the filing threshold, for each of the years at issue.  *See* I.R.C. §§ 61, 86, 6012(a).  Taxpayer did not file separate tax returns for any of those years.  (Tr. 98.)

Joint returns for taxpayer and her late husband, Willie Wright, were filed for all three years.  (Doc. 41 at 4; Ex. 16-R, Bates 101; Ex. 17-R, Bates 111; Ex. 18-R, Bates 125; Ex. 19-R, Bates 140.)  All three returns report Willie Wright's wage income and the federal income tax withheld from those wages by his employer.  (Ex. 17-R, Bates 111, 113; Ex. 18-R, Bates 125, 127; Ex. 19-R, Bates 140, 142.)  The joint returns for the first two years at issue, 2013 and 2014, did not include

15256054.1

-4-

taxpayer's Social Security income and reported refunds due from

Willie's withholding.  (Doc. 41 at 6; Ex. 17-R, Bates 111 (line 20), 113;

Ex. 18-R, Bates 125 (line 20), 127.)  The IRS added taxpayer's Social

Security income to the returns and sent notices of the resulting

deficiencies to the Wrights.  (Ex. 13-R, Bates 85; Ex.15-R, Bates 93.)

*See* I.R.C. §§ 6212, 6213 (giving taxpayers the right to petition the Tax

Court for redetermination of the deficiency asserted in such a notice).

The Wrights both consented to the assessment of additional taxes for

2013.  (Ex. 14-R, Bates 91.)  For 2014, neither filed a Tax Court petition

contesting the notice.[2]

The joint 2015 return filed on behalf of the Wrights included

taxpayer's Social Security income for that year.  (Doc. 19-R, Bates 140,

line 20.)  The return showed that because of that income, even after

application of Willie's withholding payments, the Wrights owed over one

thousand dollars in tax.  (Doc. 19-R, Bates 142.)

---

[2]  The Court may take judicial notice of the Tax Court docket,
available online at https://www.ustaxcourt.gov/dawson.html.

-5-

## 2.    Administrative proceedings

Willie Wright died in 2016.  (Doc. 41 at 7.)  In January 2017,

taxpayer filed an administrative request for relief from joint and several

liability for her 2013, 2014, and 2015 tax years.  The IRS issued a

preliminary determination explaining that the Service proposed to deny

relief because "[a]ll of the debt is linked to you.  Relief generally isn't

allowed on tax you owe on your own . . . income."  (Ex. 5-J, Bates 25.)

The IRS Appeals Office reached the same conclusion, explaining in a

letter that taxpayer was obliged to file returns for the years at issue and

could not be relieved of liability for taxes due on her own income.  (Ex.

9-J, Bates 66.)  IRS Appeals then sent taxpayer a "final determination"

in this matter, again explaining that "[w]e generally can't grant relief

on tax you owe for your own income or deductions."  (Ex. 12-J, Bates

78.)  Taxpayer petitioned the Tax Court challenging this final

determination.  (Doc. 1.)

## 3.    Tax Court proceedings

At the Tax Court trial, taxpayer testified that Willie Wright had

filed the joint returns for 2013, 2014, and 2015 without her consent.

(Tr. 75-77, 83-85, 101-103, 110-111.)

-6-

The Tax Court entered a decision determining that taxpayer is not entitled to relief under I.R.C. § 6015 for her 2013, 2014, and 2015 tax years. (Doc. 64.) In the memorandum explaining its decision, the court recognized that taxpayer's "principal contention" was that "the joint returns for the years at issue are invalid." (Doc. 63 at 4, 5.) As the Tax Court noted (Doc. 63 at 5), taxpayer contended that the validity of the joint returns was a jurisdictional fact, such that the court was obliged to resolve it before proceeding to the merits.

The Tax Court disagreed. The validity of the joint return was "a condition for relief under section 6015," the court held, "'but not for our review of the denial of a claim for relief.'" (Doc. 63 at 5, quoting *Abdelhadi v. Commissioner*, T.C. Memo. 2018-183, at *6.) Moreover, the Tax Court held, the scope of review in a stand-alone suit for relief from joint and several liability was limited to whether the taxpayer was entitled to *relief* from that liability; it did not encompass the question whether the liability existed in the first place. (Doc. 63 at 5-6.)

On the merits, the Tax Court ruled that taxpayer was not entitled to relief under any of the three operative subsections of I.R.C. § 6015. Taxpayer was not entitled to relief under subsection (b), the court ruled,

-7-

because "the 2013 and 2014 deficiencies are entirely attributable to [her]." (Doc. 63 at 7.) Similarly, the Tax Court ruled that taxpayer was not entitled to relief under subsection (c) because "[t]he deficiencies for the years at issue are entirely traceable to [her] Social Security benefits" and a small amount of interest income she had not contested was hers. (Doc. 63 at 8.) Finally, the court ruled that it would not be equitable to relieve taxpayer of liability under subsection (f), because "[t]he tax liabilities [she] seeks relief from are solely attributable to her income." (Doc. 63 at 9.)

### (iii)  Standard and scope of review

In a stand-alone proceeding seeking relief under I.R.C. § 6015, this Court reviews the Tax Court's decision denying equitable relief for abuse of discretion, but it reviews underlying questions of law *de novo* and factual findings for clear error. *Sleeth v. Commissioner*, 991 F.3d 1201, 1204 (11th Cir. 2021); *Commissioner v. Neal*, 557 F.3d 1262, 1269 (11th Cir. 2009).

## SUMMARY OF ARGUMENT

Taxpayer brings this appeal from a Tax Court decision declining to grant her relief from joint and several liability under I.R.C. § 6015.

-8-

1. Before turning to the issues particular to her own case, taxpayer argues that either the President's power to remove Tax Court judges, or the limitations on that power, violate the constitutional separation of powers. But she concedes that neither the President's removal power nor the limitations on that power have caused her compensable harm. Because taxpayer alleges no harm stemming from the statutes she alleges are unconstitutional, this Court need not decide her constitutional arguments.

2. Taxpayer's constitutional arguments are incorrect anyway. First, the President's power to remove Tax Court judges does not violate the constitutional separation of powers because the Tax Court exercises executive power, not legislative power (within the meaning of Article I) or judicial power (within the meaning of Article III). Tax Court judges serve 15-year terms rather than lifetime appointments, and rather than serving during good behavior, they are removable for, *inter alia*, delay. The cases the court hears, regarding the collection of the revenues, lie at the heart of the category of "public rights"; such matters may properly be assigned to the Executive Branch for decision. Thus, the

-9-

Tax Court exercises "quasi-judicial" power, *i.e.*, executive power in judicial form.

Second, the limitations on the President's removal authority also do not violate the constitutional separation of powers because the Tax Court is a multimember expert body with a solely adjudicative function. There are 19 Tax Court judges. The court decides only cases assigned to it by Congress, all of which involve the determination of a taxpayer's rights and responsibilities under the Internal Revenue Code. The Tax Court has no prosecutorial power, as every Tax Court case is initiated by the taxpayer, almost always in response to a notice sent by the IRS. The Tax Court cannot adopt policies for the Executive Branch; it cannot even bind the rest of the Executive Branch to its decisions. The court acts exclusively by issuing decisions in individual cases, and those decisions are appealable (by the Commissioner of Internal Revenue as well as the taxpayer) to this and other Circuit Courts of Appeals. And on appeal, Tax Court decisions are subject to review on the same basis as the decisions of a district court in a case tried to a judge, which is to say, the Tax Court's rulings on issues of law are entitled to no deference.

-10-

3.  On the merits, taxpayer also is not entitled to relief under I.R.C. § 6015.  Section 6015 permits the Commissioner or, on appeal, the Tax Court or a Court of Appeals, to grant a married or formerly-married taxpayer relief from tax liability attributable to the filing of a joint return.  Except in rare cases not implicated here, relief is not available for tax on the requesting spouse's own income.  Because the unpaid tax at issue in this case is tax imposed by Congress on taxpayer's own income, the IRS and the Tax Court properly denied relief under I.R.C. § 6015.

## ARGUMENT

In her brief on appeal, taxpayer challenges both the Tax Court's decision denying her relief under I.R.C. § 6015 and the constitutionality of I.R.C. § 7443(f), the statute that allows the President to remove Tax Court judges but restricts the scope of his power to do so.  In Part I of this Argument, we argue that, as a preliminary matter, the doctrine of constitutional avoidance counsels that this Court should exercise its discretion to avoid the removal issue altogether.  In Part II, we argue that the President's limited power to remove Tax Court judges is consistent with constitutional separation of powers.  Finally, in Part III,

-11-

we argue that the Tax Court's decision denying taxpayer's request for

innocent spouse relief for her 2013, 2014, and 2015 tax years was

correct and should be affirmed.

# I

**Taxpayer is not entitled to relief based on her arguments regarding the President's limited power to remove Tax Court judges**

**A.    Taxpayer has not alleged she suffered any harm based on the removal provision she contests, as would be required to obtain relief**

In *Collins v. Yellen*, 594 U.S. 220 (2021), the Supreme Court held

that a litigant seeking relief based on an unconstitutional removal

provision must make an affirmative showing that the provision

"inflict[ed] compensable harm." *Id.* at 259.  The Court distinguished the

removal clause at issue in that case from other separation-of-powers

cases, including Appointments Clause cases, which "involved a

Government actor's exercise of power that the actor did not lawfully

possess." *Id.* at 258.  When an officer of the United States lacks

authority to take action, the Court noted, the result is that his actions

may be "void." *Id.*  But, the Court held, an unconstitutional removal

provision "is never really part of the body of governing law (because the

-12-

Constitution automatically displaces any conflicting statutory provision from the moment of the provision's enactment)." *Id.* at 259. Thus, when a federal officer is properly appointed but notionally subject to an unconstitutional removal clause, "there is no basis for concluding that" he "lacked the authority to carry out the functions of the office." *Id.* The defective removal clause thus does not render any of his prior actions "void." *Id.* at 258. Accordingly, relief is available only if the litigant can demonstrate "compensable harm." *Id.* at 259.

To be sure, only the restrictions in the removal clause were at issue in *Collins*, whereas here taxpayer seeks to challenge both the President's power to remove Tax Court judges and the statutory restrictions on that power. But the reasoning of *Collins* is equally applicable to both removal power and restrictions on that power— neither calls into question whether the officer was properly appointed. *Id.* at 258. And taxpayer has raised no challenge to the appointment of the Tax Court judge who decided her case. *Cf.* I.R.C. § 7443(a) (Tax Court judges are appointed by the President and confirmed by the Senate). Thus, under *Collins*, she must make a showing that the

-13-

removal clause in I.R.C. § 7443(f) has caused her "compensable harm." *Collins*, 594 U.S. at 259.

The Court in *Collins* identified two ways in which a litigant can satisfy this requirement. First, a litigant could establish such harm by showing that "the President had attempted to remove [an officer] but was prevented from doing so by a lower court decision holding that he did not have 'cause' for removal." *Id.* Second, a litigant could show that "the President had made a public statement expressing displeasure with actions taken by [an officer] and had asserted that he would remove the [officer] if the statute did not stand in the way." *Id.* at 260. In either of those circumstances, there would be reason to conclude that an officer removeable at will "might have altered his behavior in a way that would have benefited" the plaintiff. *Id.* The Court in *Collins* also acknowledged that a lower court might conclude that harm might be shown in "less clear-cut" circumstances. *Id.*

Taxpayer here has not even attempted to meet the "compensable harm" standard established by *Collins*. She has not alleged, and there is no evidence, that any President was "prevented from" removing any Tax Court judge "by a lower court decision holding that he did not have

-14-

'cause' for removal." *Collins*, 594 U.S. at 259. Taxpayer also has identified no evidence that the President disapproved of the decision of the Tax Court judge in this case, such that the judge "might have altered his behavior in a way that would have benefited" her. *Id.* at 260.

In fact, in the Tax Court taxpayer made almost the opposite claim, contending that "when a taxpayer learns that both the Respondent and the judge assigned to his case are part of the same team, *i.e.*, the Executive Branch, . . . the taxpayer (and the American public writ large) will have the perception that the proceedings are not fair." (Doc. 31 at 21.) We doubt this is a sufficient allegation of harm stemming from Presidential removal power. Even Article III judges are part of the same Government as the President, and in tax cases, that relationship has sometimes been sufficient to draw allegations of bias. *E.g.*, *United States v. Zugar*, 602 F. Supp. 889, 892 (D. Conn. 1984) (in a prosecution for tax evasion, the fact that the district court judge's "salary is paid by the United States neither dictates nor suggests the need for recusal"), *aff'd*, 755 F.2d 915 (2d Cir. 1985) (table). But the Court need not decide whether this assertion is a sufficient allegation of

-15-

harm because, on appeal, taxpayer has abandoned this contention in order to more coherently advance the argument that the President she previously claimed to distrust should have unconstrained removal power over the Tax Court judge deciding her case.  *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 680 (11th Cir. 2014) (arguments not raised in an appellate briefed are abandoned).

On appeal, far from alleging compensable harm, taxpayer contends that she "need not allege or prove harm" to contest both the President's removal power and the limitations on that power.  (Br. 21.) In this regard, she relies (Br. 21) on a passage from the Supreme Court's decision in *Seila Law*, 591 U.S. 197, 211 (2020), reaffirming that "a litigant challenging government action as void on the basis of the separation of powers is not required to prove that the Government's course of conduct would be different in a 'counterfactual world' in which the Government had acted with constitutional authority."  But as the Court in *Collins* held, this argument "read[s] far too much into" the decision in *Seila Law*.  594 U.S. at 258.  As noted above, under *Collins*, the actions of a validly appointed official subject to an invalid removal statue are not inherently "void."  Accordingly, under *Collins*, taxpayer

must show she suffered some "compensable harm" from either the fact of the President's power to remove Tax Court judges or the restrictions on that power.

### B.    Where no relief can be granted, this Court need not reach academic questions regarding the Constitution

Because taxpayer has declined to allege harm stemming from the statutes she alleges are unconstitutional, this Court need not reach her constitutional arguments.  "A fundamental and longstanding principle of judicial restraint requires that courts avoid reaching constitutional questions in advance of the necessity of deciding them."  *Lyng v. Northwest Indian Cemetery Protective Ass'n*, 485 U.S. 349, 445 (1988).  Where the issue presented is "a wholly academic question," this Court maintains that "in keeping with the judicial restraint principals of constitutional avoidance, we do not answer it."  *Fort Lauderdale Food Not Bombs v. City of Fort Lauderdale*, 11 F.4th 1266, 1291 (11th Cir. 2021); *see also*, *e.g.*, *Burns v. Town of Palm Beach*, 999 F.3d 1317, 1348 (11th Cir. 2021) ("[g]enerally, we don't answer constitutional questions that don't need to be answered"); *Boss Cap., Inc. v. City of Casselberry*, 187 F.3d 1251, 1254 (11th Cir. 1999) ("it is our custom not to decide difficult constitutional questions unless we must"), *abrogated on other*

*grounds by City of Littleton v. Z.J. Gifts D-4, L.L.C.*, 541 U.S. 774 (2004); *Shahar v. Bowers*, 114 F.3d 1097, 1100 (11th Cir. 1997).

Under this principle, since *Collins* was decided, at least three Circuit Courts of Appeals have held that when a litigant fails to show that the challenged removal protections have caused her compensable harm, the court need not reach the merits of a removal-power challenge. The Sixth Circuit held that there is no need to "delve deeply into the *Seila Law* inquiry" in a case where the litigant had not shown harm. *Calcutt v. Fed. Deposit Ins. Corp.*, 37 F.4th 293, 314 (6th Cir. 2022), *cert. granted on separate issue and rev'd by* 598 U.S. 623 (2023). The Second and Fifth Circuits have also held that an argument about the propriety of restrictions on removal is foreclosed where there is no showing of harm. *Consumer Fin. Prot. Bureau v. L. Offs. of Crystal Moroney, P.C.*, 63 F.4th 174, 179 (2d Cir. 2023); *Cmty. Fin. Servs. Ass'n of Am., Ltd. v. Consumer Fin. Prot. Bureau*, 51 F.4th 616, 633 (5th Cir. 2022), *rev'd and remanded*, 601 U.S. 416, *and reinstated in part by* 104 F.4th 930 (5th Cir. 2024).

Moreover, in the absence of a showing of harm, even courts that have discussed the constitutionality of the challenged removal

-18-

provisions have upheld them on appeal. *Kaufmann v. Kijakazi*, 32 F.4th 843, 850 (9th Cir. 2022); *Decker Coal Co. v. Pehringer*, 8 F.4th 1123, 1137 (9th Cir. 2021); *see also Leachco, Inc. v. Consumer Prod. Safety Comm'n*, 103 F.4th 748, 757, 763 (10th Cir. 2024) (denying a preliminary injunction because no harm was alleged). And none of these cases have held that courts must invariably resolve the constitutional issue before turning to the remedial one.

Therefore, under this Court's long-established rule against addressing "wholly academic question[s]" about the Constitution, *Fort Lauderdale Food*, 11 F.4th at 1291, this Court should join the Second, Fifth, and Sixth Circuits in declining to address the constitutionality of removal provisions absent at least a plausible allegation of harm.

## II

**Because the Tax Court exercises limited executive power, both the President's power to remove Tax Court judges and the limitations on that power are consistent with the constitutional separation of powers**

### A.    The Tax Court, in general

#### 1.    Taxation and the tripartite division of power

The Constitution assigns to Congress the "Power To lay and collect Taxes, Duties, Imposts and Excises, to pay the Debts and provide

-19-

for the common Defence and general Welfare of the United States." Art.

I, sec. 8, cl. 1. Consistent with the established legal tradition of the

colonies before the Constitution, a taxpayer who believes he has

overpaid his taxes may sue in an Article III court to recover a refund.

*See Flora v. United States*, 362 U.S. 145, 153-55 (1960); 28 U.S.C.

§ 1346(a)(1). But since the earliest days of the Republic, it has been the

Executive Branch that is charged with the assessment and collection of

unpaid tax due under the statutes promulgated by Congress. *See* Act of

July 9, 1798, ch. 70, §§ 8, 20, 1 Stat. 580, 585, 588; *see also Murray's*

*Lessee*, 59 U.S. at 277 (tracing the laws and practice governing revenue

collection from *Magna Charta* through the time of the Constitution);

*Bull v. United States*, 295 U.S. 247, 259-60 (1935) ("The statute

prescribes the rule of taxation," but the administrative powers to collect

the tax date to "[t]ime out of mind"); I.R.C. §§ 6201 ("assessment

authority"), 6301 ("collection authority").

　　Since the earliest days of the Republic, Congress has also provided

some mechanism for pre-payment administrative review of the pre-

payment administrative decisions regarding tax assessment and

collection. The Act of July 9, 1798, *supra*, provided for an

-20-

administrative appeals process.  *See also Flora*, *supra*, at 158-163

(describing the administrative procedures for pre-payment review of tax

assessments, including the Tax Court, that were in place in the mid-

20th century).

### 2.    The history of the Tax Court

In 1924, Congress established the Board of Tax Appeals as "an

independent agency in the [E]xecutive [B]ranch of Government,"

thereby granting preassessment review of deficiencies before a tribunal

separate from the Bureau of Internal Revenue (as the IRS was then

known).  Revenue Act of 1924, ch. 234, § 900(a), (e), (k), 43 Stat. 253,

336-38.  The members of the Board were appointed by the President to

10-year terms with the advice and consent of the Senate, *id.* at § 900(b),

43 Stat. at 336-37, but could be removed by the President "for

inefficiency, neglect of duty, or malfeasance in office, but for no other

reason," *id.* at § 900(b), 43 Stat. at 337.

In 1926, Congress extended the term of Board members to 12

years and amended the removal provision to guarantee "notice and

opportunity for a public hearing" before the President could remove a

Board member for cause.  Revenue Act of 1926, ch. 27, § 1000, 44 Stat.

-21-

9, 105-06.  The 1926 Act also made the Board's decisions directly reviewable by the courts of appeals.  *Id.* at § 1001(a), 44 Stat. at 109-10.  In 1942, Congress changed the name of the Board to "the Tax Court of the United States" and declared that the court's members "shall be known" as "judges," but Congress did not otherwise change the provisions that had governed the Board.  Revenue Act of 1942, ch. 619, § 504(a), 56 Stat. 798, 957.

In 1969, Congress amended the statute addressing the court's status.  It "established, under article I of the Constitution . . . , a court of record to be known as the United States Tax Court."  Tax Reform Act of 1969, Pub. L. No. 91-172, § 951, 83 Stat. 487, 730 (codified at I.R.C. § 7441).  The reconstituted court was "a continuation of" the old court, and judges of the prior court became its judges.  *Id.* at § 961, 83 Stat. at 735-36.  In addition, Congress amended § 7441 to delete the designation of the Tax Court as an "independent agency in the Executive Branch of the Government."  *Compare* Tax Reform Act of 1969, § 951, 83 Stat. at 730, *with* Revenue Act of 1924, ch. 234, § 900(k), 43 Stat. at 338.  The only other substantive change was that the Tax Court was granted the

-22-

contempt power.  Tax Reform Act of 1969, § 956, 83 Stat. at 732

(codified at I.R.C. § 7456(c)).

The Tax Court has "such jurisdiction as is conferred" by the Code.

I.R.C. § 7442.  The Tax Court is currently composed of 19 judges

appointed by the President with the advice and consent of the Senate.

I.R.C. § 7443(a)-(b).  Although a Tax Court judge is paid the same

salary as judges of the federal district courts, I.R.C. § 7443(c)(1), the

term of office is 15 years, I.R.C. § 7443(e).  Under I.R.C. § 7443(f),

moreover, judges of the Tax Court "may be removed by the President,

after notice and opportunity for public hearing, for inefficiency, neglect

of duty, or malfeasance in office, but for no other cause."  The text of

this removal statute has been unchanged since 1926.  *See* Revenue Act

of 1926, ch. 27, § 1000, 44 Stat. 9, 105-06.

The presidential removal power in § 7443(f) was upheld against a

separation-of-powers challenge in *Kuretski v. Commissioner*, 755 F.3d

929, 939 (D.C. Cir. 2014).  As the D.C. Circuit reasoned, Tax Court

judges do not exercise "judicial power" "in the particular sense employed

by Article III."  *Id.* at 941.  They also do not exercise "legislative power

under Article I."  *Id.* at 943.  Thus, the court reasoned, the Tax Court

15256054.1

-23-

must exercise executive power, with the result that the President's power to remove Tax Court judges "does not involve the prospect of presidential removal of officers in another branch." *Id.* at 939.

In 2015, after the decision in *Kuretski*, Congress amended I.R.C. § 7441 by adding a new sentence at the end, providing that "[t]he Tax Court is not an agency of, and shall be independent of, the [E]xecutive [B]ranch of the Government." Consolidated Appropriations Act of 2016, Pub. L. No. 114-113, Div. Q, Title IV, § 441, 129 Stat. 2242, 3126 (Dec. 18, 2015).

Following that amendment, the D.C. Circuit reaffirmed the separation-of-powers analysis adopted in *Kuretski*. *Crim v. Commissioner*, 66 F.4th 999, 1001 (D.C. Cir. 2023). The Tax Court has also held, in *Battat v. Commissioner*, 148 T.C. 32, 58 (2017), that it does not exercise judicial power within the meaning of Article III and that, as a result, the President's power "to remove Tax Court Judges for cause does not violate separation of powers principles." As the D.C. Circuit noted in *Crim*, "'congressional pronouncements are not dispositive' of the status of a 'governmental entity for purposes of separation of powers analysis under the Constitution.'" *Id.* at 1001

(quoting *Dep't of Transp. v. Ass'n of Am. R.R.*, 575 U.S. 43, 61 (2015)).

The amendment does not change the basic organization or operation of

the Tax Court, nor does it say that Congress was transferring the Tax

Court to a different Branch or changing its constitutional status.

Accordingly, the court held in *Crim*, the new sentence added to I.R.C.

§ 7441 was intended "only to 'ensure that there is no appearance of

institutional bias' when the Tax Court adjudicates disputes between the

IRS and taxpayers." *Id.* at 1001 (quoting S. Rep. No. 114-14, at 10).[3]

### 3.    Other key features of the Tax Court

As noted above, the Tax Court has "such jurisdiction as is

conferred" by the Internal Revenue Code.  I.R.C. § 7442.  The court

typically handles 20,000 to 30,000 cases per year, of which about 100

are appealed to the Circuit Courts of Appeals.  United States Tax Court,

---

[3] This was akin to the way the Tax Court was previously explicitly declared to be independent from 1924 until the 1969 amendment.  Further, by clearly stating that the Tax Court was not "an agency" and that it was "independent" of the Executive Branch, Congress clarified the Tax Court would not be subject to certain laws that generally apply to Executive Branch agencies.  *See Byers v. United States Tax Court*, 211 F. Supp. 3d 240, 248-50 (D.D.C. 2016) (holding the Tax Court is not an agency subject to the Freedom of Information Act and finding the 2015 amendment was a "clarification" providing "further support" for that conclusion).

Congressional Budget Justification for FY 2025, at 23, 26 (available

online at FY_2025_Congressional_Budget_Justification.pdf

(ustaxcourt.gov)).

Over 90 percent of Tax Court cases are classified as "deficiency

cases." *Id.* at 18. A "deficiency" is the difference between the amount of

tax reported as due by the taxpayer (if any) and the amount due under

the Internal Revenue Code. I.R.C. § 6211. When the Commissioner

determines a deficiency in tax, he must send a notice of deficiency to the

taxpayer. I.R.C. § 6212(a). The notice of deficiency is sometimes called

the "ticket to the Tax Court" because a petition for review of that notice

is the primary source of Tax Court jurisdiction. *E.g.*, *Benzvi v.

Commissioner*, 787 F.2d 1541, 1542 (11th Cir. 1986) (citation omitted);

I.R.C. § 6213(a). Tax Court jurisdiction also includes stand-alone

proceedings for relief from joint and several liability, like this one.

I.R.C. § 6015(e).

The Tax Court is authorized to prescribe its own rules of practice

and procedure. I.R.C. § 7453. The Federal Rule of Evidence apply. *Id.*

Tax Court decisions are appealable to the United States Courts of

Appeals, where they are reviewed "in the same manner and to the same

-26-

extent as decisions of the district courts in civil actions tried without a
jury." I.R.C. § 7482(a)(1). Upon review, the Courts of Appeals have the
power to "affirm or, if the decision of the Tax Court is not in accordance
with the law, to modify or to reverse the decision of the Tax Court, with
or without remanding the case for a rehearing, as justice may require."
I.R.C. § 7482(c)(1).

> **B.    The President's power to remove Tax Court judges
> does not violate the separation of powers because the
> Tax Court exercises executive power, albeit in judicial
> form**
>
> > **1.    The Tax Court exercises executive power**
> >
> > > **a.    The Tax Court cannot exercise legislative
> > > power within the meaning of Article I**

In her brief on appeal, taxpayer contends that because the Tax
Court is an Article I court, it is "located in Article I," or put differently,
is "squarely placed in the Legislative Branch under Article I." (Br. 31.)
This contention is erroneous. The legislative power of the United States
within the meaning of Article I can only be exercised by Congress
passing legislation through the bicameral process. *I.N.S. v. Chadha*,
462 U.S. 919, 954-55 (1983).

Taxpayer is correct that the Tax Court is an Article I court,
meaning it is a legislative court established by Congress. *See* I.R.C.

-27-

§ 7441 (stating the Tax Court "is hereby established, under article I of the Constitution of the United States").  But, as the D.C. Circuit held when confronted with the same argument, the fact the Tax Court is "an Article I legislative court" does not mean that Congress established the Tax Court in, or transferred it to, the Legislative Branch or that the Tax Court exercises any form of "legislative power."  *Kuretski v. Commissioner*, 755 F.3d 929, 942-43 (2014).  The Tax Court is "in the business of interpreting and applying the internal revenue laws, . . . not in the business of making those laws."  *Id.* at 943 (citation omitted).

It may be noteworthy that, from 1924 to 1926, the Executive Branch could not appeal the decisions of the Board of Tax Appeals to the Article III courts.  *See* Revenue Act of 1926, ch. 27, § 1001(a), 44 Stat. at 109-10 (making the Board's decisions directly reviewable by the courts of appeals).  For that two-year period, the Board of Tax Appeals arguably could have been understood as having the power to bind the Executive Branch to its interpretation of the Tax Code, at least prior to collection, and thus arguably might be said to have played a quasi-legislative role within the Executive Branch.  But any such role has been obsolete for nearly a century.  Today the Tax Court's

-28-

interpretation of the Internal Revenue Code may be accorded

persuasive value because of its subject-matter expertise, but its

interpretations of the law are no more and no less "legislative" than

those of a United States District Court.  *See* I.R.C. § 7482(a); *see also*

*ABKCO Indus., Inc. v. Commissioner*, 482 F.2d 150, 156 & n.3 (3d Cir.

1973) (tracing the history of appellate review of Tax Court decisions).

> **b.    The Tax Court cannot exercise judicial**
> **power within the meaning of Article III**

Similarly but more subtly incorrect is taxpayer's contention (Br.

31) that the Tax Court "solely exercises judicial power."  To be sure, the

Tax Court is called a court, and it takes the form of a court, but Tax

Court judges cannot exercise judicial power within the meaning of

Article III because they serve limited terms.  *Compare* Art. III sec. 1,

*with* I.R.C. § 7443(e) (15 year term of office).  Contemplating

bankruptcy judges, who serve similar 14-year terms, the Supreme

Court held there can be "no doubt that" they "are not Art. III judges."

*N. Pipeline Const. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 61

(1982); *see also SEC v. Jarkesy*, 144 S. Ct. 2117, 2125 (2024)

(distinguishing Executive Branch adjudications from proceedings before

"a life-tenured, salary-protected Article III judge").  Thus, like the

bankruptcy court at issue in *Northern Pipeline*, the Tax Court cannot exercise the judicial power of the United States within the meaning of Article III.

This point is so clear that taxpayer essentially agrees. (Br. 53 n. 16.) But she inverts the argument, arguing in a footnote in the conclusion of her brief that the Tax Court might simply be "an Article III court," with a statutory "15-year term limit" that "violates the Constitution's requirement for lifetime tenure 'during good behavior'." While we do not doubt that the Tax Court could be so constituted, in creating the Tax Court, Congress did not exercise its Article III power to establish courts. I.R.C. § 7441 (establishing the Tax Court under Article I). *Cf. Stern v. Marshall*, 564 U.S. 462, 468-69 (2011) (noting that bankruptcy courts violate the "basic principle[]" that Article III courts must be established by Congress under Article III).

To be sure, the Supreme Court in *Freytag v. Commissioner*, 501 U.S. 868, 891 (1991), stated that the Tax Court "exercises a portion of the judicial power of the United States." But the same opinion also states that "non-Article III tribunals . . . exercise the judicial power of the United States," such that "the judicial power of the United States is

-30-

not limited to the judicial power defined under Article III." *Id.* at 889.

This broad use of the word "judicial" in *Freytag* follows the language of

*Murray's Lessee*, which defines a "judicial act" in "an enlarged sense" to

encompass "all those administrative duties the performance of which

involves an inquiry into the existence of facts and the application to

them of rules of law." 59 U.S. at 280. Thus, *Kuretski* correctly held that

*Freytag* only used the words "judicial power" in a broad or "enlarged

sense" and was not using that phrase "in the particular sense employed

by Article III." *Kuretski*, 755 F.3d at 941.

More recent cases have described such administrative

adjudications as instances of "executive Power" exercised in "judicial

form." *City of Arlington, Tex. v. F.C.C.*, 569 U.S. 290, 304 n. 4 (2013)

("[a]gencies . . . conduct adjudications . . . and have done so since the

beginning of the Republic," but though such adjudications may take

"'judicial' forms . . . they are exercises of—indeed, under our

constitutional structure they *must be* exercises of—the 'executive

Power'"); *see also S.C. State Ports Auth. v. Fed. Mar. Comm'n*, 243 F.3d

165, 171 (4th Cir. 2001) (a "central lesson from *Freytag* is that

adjudication by adversarial proceedings *can* exist outside the context of Article III"), *aff'd*, 535 U.S. 743 (2002).

Because "[T]ax Court judges do not exercise the 'judicial power of the United States' pursuant to Article III" and the Tax Court is not in the Legislative Branch, "[i]t follows that the Tax Court exercises its authority as part of the Executive Branch." *Kuretski*, 755 F.3d at 943. Taxpayers' arguments to the contrary are unavailing.

> c.    **The matters decided by the Tax Court are prototypical matters of "public right" that may, consistent with the Constitution, be assigned to the Executive Branch**

As the D.C. Circuit explained in *Kuretski*, the "the Supreme Court has recognized a 'category of cases involving public rights' that Congress can constitutionally assign to non-Article III tribunals." *Kuretski*, 755 F.3d at 939 (quoting *Stern v. Marshall*, 564 U.S. 462, 485 (2011)). "The public-rights doctrine is grounded in a historically recognized distinction between matters that could be conclusively determined by the Executive and Legislative Branches and matters that are 'inherently . . . judicial.'" *N. Pipeline Const. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 68 (1982) (citation omitted) (alterations in

-32-

original) (plurality opinion); *see also Stern v. Marshall*, 564 U.S. 462, 485 (2011).

The Court very recently reviewed the public rights doctrine in *SEC v. Jarkesy*, 144 S. Ct. 2117, 2132 (2024). As the Court there explained, the public rights doctrine was first articulated in *Murray's Lessee v. Hoboken Land & Improvement Co.*, 59 U.S. 272, 284 (1856), a suit concerning the Government's "power to collect revenue." The *Jarkesy* Court confirmed that the public rights doctrine beings with, though it also "extends beyond," "cases involving the collection of the revenue." *Jarkesy, supra*, at 2132; *see also id.* at 2146 (Gorsuch, J., concurring) (confirming that public rights cases "traditionally included the collection of revenue"); *id.* at 2160 (Sotomayor, J., dissenting) (confirming that the public rights doctrine originated in a case involving "the Government's exercise of its constitutional power to collect revenue"). Thus, while the outer limit of what constitutes a "public right" may be a matter of dispute, pre-payment cases regarding the collection of revenue due to the federal government under the Tax Code lie at the heartland of the doctrine. *Kuretski*, 755 F.3d at 939; *see also Samuels, Kramer & Co. v. Commissioner*, 930 F.2d 975, 992 (2d Cir.

-33-

1991) ("The relationship between the government and taxpayer plainly gives rise to public rights and we have no doubt that the resolution of such disputes can be relegated to a non-Article III forum."), *abrogated on other grounds by Freytag*, 501 U.S. at 892. And, in fact, it was only because the tax question in this case involved a public rights dispute that it could be constitutionally assigned to the Tax Court, a non-Article III tribunal located in the Executive Branch. *See Kuretski*, 755 F.3d at 939-40 (citations omitted). Thus, the public rights doctrine is actually at the core of the Tax Court's existence, and not irrelevant, as taxpayer contends.

Taxpayer argues (Br. 44) that the "public rights" doctrine "has no limiting principle." *Cf. Jarkesy*, 144 S. Ct. at 2164 (Sotomayor, J., dissenting) ("What is the legal principle behind saying only these areas and no further?") The doctrine, however, relies on historical practice dating back to the founding "to flesh out the scope of the public rights exception." *Id.* at 2152 (Gorsuch, J., concurring); *see also id.* at 2134-35 (historical analysis of a public rights dispute); *cf. Stern v. Marshall*, 564 U.S. 462, 484 (2011) (articulating the related rule, also grounded in historical practice, that "[w]hen a suit is made of 'the stuff of the

-34-

traditional actions at common law tried by the courts at Westminster in 1789,' and is brought within the bounds of federal jurisdiction, the responsibility for deciding that suit rests with Article III judges in Article III courts") (citation omitted).

Taxpayer suggests (Br. 44-45) that such analysis would mean other judges, including district judges, are also removable by the President. But the fact that Congress may be able to determine how (and subject to what limitations) an Article I judge is removable in no way indicates that Congress could provide a mechanism for removing Article III district judges other than by impeachment. And the fact that pre-payment tax disputes may be assigned to the Tax Court (or even to the Treasury Department) for resolution in no way implies that traditional post-payment tax refund suits could be removed from the Article III courts. Taxpayer's blithe assumption that because it involves taxes, "a tax refund lawsuit" is also "a public rights case" (Br. 45), flies in the face of the ancient procedural distinction between pre-payment disputes, which historically were handled administratively without judicial review, and post-payment refund suits, which have traditionally been heard in the Article III courts. *Flora*, 362 U.S. at 153-55; *Murray's*

*Lessee*, 59 U.S. at 277.  Indeed, when the Board of Tax Appeals was created in 1924, the contemporaneous belief was that until that time there had been no "exception to the rule that no review by the courts is permissible at common law or under the statutes, until the tax has been paid and the Government assured of its revenue."  Bickford, *Court Procedure in Federal Tax Cases* 119 (Rev. ed. 1929); *see Flora v. United States*, 362 U.S. 145, 169 n. 36 (1960) (citing this as "[o]ne of the clearest" contemporaneous "statements of the rule"); *cf. Kuretski*, 755 F.3d at 932 ("Until 1921, taxpayers had no pre-assessment opportunity to dispute the amount they owed the Treasury.").

>   2.   **Because Tax Court judges exercise executive power, taxpayer's arguments that the President's power to remove Tax Court judges violates the separation of powers are fundamentally misconceived**
>
>   a.   **The President's removal powers over executive officers cannot violate the separation of powers**

Taxpayer's position regarding presidential removal power is that "intrabranch removal is prohibited when the intrabranch officer is exercising a different power than the removal official."  (Br. 46 n.14.)

-36-

This argument is misconceived. By its very nature, intrabranch removal cannot violate the constitutional separation of powers.

As the D.C. Circuit in *Kuretski* correctly held, there can be no separation-of-powers problem with presidential removal of Tax Court judges, who may be described as exercising judicial power in an "enlarged sense," but who exercise executive power in a constitutional sense. 755 F.3d at 932, 939-44. And, in fact, the Supreme Court has long held that "the President may remove a judge who serves on an Article I court." *Mistretta v. United States*, 488 U.S. 361, 411 n.35 (1989) (citing *McAllister*, 141 U.S. at 185). There is no support for taxpayer's argument that presidential removal of an Executive Branch official could violate the separation of powers, particularly given that the Supreme Court has held that the President must have some power to remove an Executive Branch official. *Seila Law*, 591 U.S. at 213-16.

Similarly nonsensical is taxpayer's argument (Br. 34) that the President's power to remove an Article I judge must be as limited as his power to remove an Article III judge because, in her view, the separation-of-powers "analysis must be the same for exercise of judicial power regardless of branch." In Part II.C of this argument, *infra*, we

contend that a desire for unbiased adjudication subject to some
presidential oversight—for example, I.R.C. § 7443(f) permits the
President to remove Tax Court judges for "delay"—will suffice to uphold
the statutory limitations preventing the President from summarily
removing Tax Court judges. And perhaps in some other case, a similar
argument might suffice to uphold a statute shielding another Article I
judge from Presidential removal altogether. (*See* Br. 35 (discussing the
statutory removal provisions governing other Article I courts).) But
taxpayer goes too far in arguing that Congress may never grant the
President limited removal power over an officer who, as we have
already demonstrated, must be exercising executive, rather than
judicial or legislative, power. Thus, taxpayer's starting premise that
"interbranch removal" is a relevant concern in this case (Br. 34) is
mistaken.[4]

---

[4] Taxpayer is also mistaken in arguing that an interbranch
removal power would necessarily present a constitutional problem.
Both *Kuretski* and the Supreme Court's decision in *Mistretta v. United
States* indicate that interbranch removal is sometimes permissible:
"'Nothing in *Bowsher*, however, suggests that one Branch may never

(continued…)

-38-

### b.   The cases taxpayer relies upon do not support her position

Taxpayer relies (Br. 36-43) on four Supreme Court cases, *Bowsher*, *Morrison*, *Mistretta*, and *McAllister*, that she contends provide support for her argument that presidential removal of Tax Court judges presents a separation-of-powers problem.  Taxpayer misinterprets those precedents.

*Bowsher v. Synar*, 478 U.S. 714 (1986), has nothing to do with presidential removal of another Executive Branch official.  It concerns Congress' inability to empower itself to control executive functions by providing for the removal of executive officials by Congress other than

_____

exercise removal power, however limited, over members of another Branch.'" 755 F.3d at 938 (quoting *Mistretta v. United States*, 488 U.S. 361, 411 n.35 (1989)).  In fact, *Mistretta* explained that interbranch removal would only be a problem if such a removal power was a "threat to the balance of power among the Branches" or if it provided "control in one Branch over the constitutionally assigned mission of another Branch."  *Mistretta*, 488 U.S. at 411 n.35.  The Tax Court does not cause any such concerns.  And, in fact, as *Mistretta* also recognized, the Supreme Court has already held that "the President may remove a judge who serves on an Article I court."  *Mistretta*, 488 U.S. at 411 n.35 (citing *McAllister v. United States*, 141 U.S. 174, 185 (1891)).  Because the Tax Court and the President both exercise executive power, however, this entire argument is beside the point here.

by impeachment.  *See id.* at 726-27 (citing *Chadha*, 462 U.S. at 954-55).

And, at all events, taxpayer's reading of *Bowsher* as establishing an

ironclad rule against interbranch removal was later rejected by the

Supreme Court in *Mistretta*, 488 U.S. at 411 n.35.

Nor does *Morrison v. Olson*, 487 U.S. 654 (1988), support

taxpayer's argument.  Morrison related to the removal of an

independent counsel by the judiciary—a situation that, unlike this case,

at least presented a possible interbranch issue.  However, in *Morrison*,

the Court found that the removal statute did "not violate Article III"

and did "not violate separation-of-powers principles by impermissibly

interfering with the functions of the Executive Branch."  *See id.* at 656,

696-97.

*Mistretta* concerned the President's power to remove Article III

judges from their roles on the sentencing commission, but not from their

judicial positions.  That case is also inapposite here because Tax Court

judges are not Article III judges.  Noteworthy here, however, is footnote

35 of *Mistretta*, in which the Court explained that *Bowsher, supra*, and

*McAllister*, *infra*, should not be misconstrued as holding that

interbranch removal provisions are never allowed.  *See Kuretski*, 755 F.3d at 938 (quoting *Mistretta*, 488 U.S. at 411 n.35).

*McAllister v. United States*, 141 U.S. 174 (1891), is relevant, but, again, taxpayer misconstrues its significance.  As the Court explained in the *Mistretta* footnote, the Supreme Court's decision in *McAllister* makes clear that there is no constitutional problem with the President removing a judge from an Article I court.[5]  *See Mistretta*, 488 U.S. at 411 n.35 (citing *McAllister*, 141 U.S. at 185); *see also Kuretski*, 755 F.3d at 941 (citing *Shurtleff v. United States*, 189 U.S. 311, 316 (1903)); *McAllister*, 141 U.S. at 179-91) (stating the President may remove judges of territorial courts).  Similarly, there is no problem with presidential removal of Article I Tax Court judges.

> **c.  Taxpayer's dispute with the text of *Battat* is beside the point**

Taxpayer also attacks the Tax Court's decision in *Battat* (on which the ruling below was in part based) for holding that "regardless of the

---

[5]  Taxpayer in his brief refers to territorial courts as Article IV courts (Br. 41-42, 44), which is contrary to the Supreme Court's description in *Mistretta*.  488 U.S. at 411 n.35.  But such labels make no difference as to how legislative courts are analyzed.  *Kuretski*, 755 F.3d at 942-43.

-41-

branch location of the Tax Court, provisions authorizing the removal of Tax Court judges are constitutional." (*See* Br. 33 (citing *Battat*, 148 T.C. at 39).)[6] In this regard, she argues (Br. 43) that "if this Court were to uphold the *Battat* decision and hold that the Separation of Powers Doctrine does not apply, the ramifications of the holding would ripple out to all Article I judges."

This alarmist argument is mistaken on multiple levels. Neither *Battat* nor *Kuretski* held that the separation-of-powers doctrine did not apply to the Tax Court; rather, both held there was no separation-of-powers problem with presidential removal of Tax Court judges. *Battat*, 148 T.C. at 58; *Kuretski*, 755 F.3d at 932, 939. Moreover, the *Battat* decision was clearly intended to be fully compatible with the D.C. Circuit's decision in *Kuretski*. Indeed, the Tax Court stated in *Battat* that the President's removal power would be constitutional if the Tax Court exercised executive power *or* if interbranch removal was permissible. *Battat*, 148 T.C. at 58. While the D.C. Circuit had taken

---

[6] The Tax Court's decision below was a very short order that essentially just cited to the Tax Court's opinion in *Battat*, this Court's opinion in *Kuretski*, and another Tax Court opinion issued the same day as *Battat*, *Thompson v. Commissioner*, 148 T.C. 59 (2017).

-42-

the first approach, the Tax Court took the second, but it did not state that the D.C. Circuit's approach was incorrect or incompatible.

Because the *Battat* opinion does not clearly state that the Tax Court exercises executive power, taxpayer claims the reasoning of this case is "as shocking as it is unprecedented."  (Br. 33.)  But, as we have already demonstrated, the Tax Court may and must exercise executive power.  And there is nothing shocking or unprecedented about the idea that the President may have the power to remove an official who exercises executive power.  Indeed, "the traditional default rule" is that "removal is incident to the power of appointment."  *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 509 (2010).[7]

### C.   The limitations on the President's power to remove Tax Court judges are also constitutional

#### 1.    Introduction

The President has the constitutional duty to "take Care that the Laws be faithfully executed."  Art. II, § 3.  "'[A]s a general matter,"

---

[7] Taxpayer also suggests (Br. 33) that somehow the opinion in *Battat* "necessarily implies" that separation-of-powers problems are limited "to the Executive Branch's intrusion into Article III."  *Battat* does no such thing.  Separation-of-powers concerns arise when any branch intrudes upon the constitutional function of another.

-43-

therefore, the Constitution gives the President 'the authority to remove those who assist him in carrying out his duties.'" *Seila L. LLC v. Consumer Fin. Prot. Bureau*, 591 U.S. 197, 204 (2020) (quoting *Free Enterprise Fund v. Public Company Accounting Oversight Bd.*, 561 U.S. 477, 513-14 (2010)); *see also Free Enterprise Fund*, *supra*, at 509 (identifying unconstrained removal of Presidential appointees as the "default rule"). The goal of this arrangement, as taxpayer points out (Br. 19-20), is to ensure "electoral accountability" and "political" control over the government official in question. *See Collins*, 594 U.S. at 252.

I.R.C. § 7443(f) provides that a Tax Court judge "may be removed by the President, after notice and opportunity for public hearing, for inefficiency, neglect of duty, or malfeasance in office, but for no other cause." Taxpayer contends (Br. 17-29) that these statutory limitations on the President's removal power encroach upon the constitutional separation of powers. But the Supreme Court has long recognized an exception to the default rule of unlimited presidential removal for principal executive officers sitting on multi-member "quasi-legislative" or "quasi-judicial" commissions, *Free Enterprise Fund*, 561 U.S. at 493 (citing *Humphrey's Executor v. United States*, 295 U.S. 602, 627-29

15256054.1

-44-

(1935)), and for the members of an "adjudicatory body," *Seila Law*, 591

U.S. at 216 (quoting *Wiener v. United States*, 357 U.S. 349, 356 (1958)).

As a multi-member expert body that acts only through adjudication, the

Tax Court falls well within this long-established exception.

## 2.    The Tax Court is a multimember expert body

The Tax Court is a multimember expert body.  *See* I.R.C. § 7443(a)

("[t]he Tax Court shall be composed of 19 members").  The chief judge is

designated biennially by the court.  I.R.C. § 7444(b).  The Tax Court has

jurisdiction only as conferred by Congress, and that jurisdiction is

limited to tax disputes.  I.R.C. § 7442.  Because the Tax Court's

authority is limited to federal tax matters, it is an example of an expert

body that routinely deals with a limited "class of questions of fact which

are peculiarly suited to examination and determination by an

administrative agency specially assigned to that task."  *Crowell v.*

*Benson*, 285 U.S. 22, 46 (1932).  Although the Tax Court decides

questions of law, it may properly be described, in this context, as

deciding "questions of fact" because on appeal its conclusions of law are

reviewable *de novo*.  I.R.C. § 7482(a)(1); *Sleeth*, 991 F.3d at 1204.  As

with the decisions of the Tax Court, the decisions of the Deputy

-45-

Commissioner at issue in *Crowell* regarding "questions of law" were "without finality" because they were subject to *de novo* review. *Crowell*, 285 U.S. at 45.

Moreover, as the Supreme Court has already recognized, the Tax Court "does not make political decisions." *Freytag*, 501 U.S. at 891. For this reason, Congress has never mandated any particular partisan arrangement for the Tax Court, as taxpayer contends they must. (Br. 23.) Due to staggered terms and the statutory retirement age, I.R.C. § 7447(b)(1), we are not aware of any period when one President has had the opportunity to nominate an unusually high or low number of Tax Court judges, and taxpayer suggests none. Moreover, taxpayer does not suggest any reason that political control of the Tax Court would matter. The question what taxes should be imposed is for Congress, Art. I, § 8, cl., 1; the question what tax is due from a particular individual under the laws established by Congress is not a partisan matter subject to presidential discretion.

### 3. The Tax Court acts only through adjudication

As the Court reiterated nearly a century ago in *Ex parte Bakelite Corp.*, 279 U.S. 438, 451 (1929), Congress may create "[l]egislative

-46-

courts" like the Tax Court as "special tribunals" to decide "matters[] arising between the government and others, which from their nature do not require judicial determination and yet are susceptible of it." *Id.* (citing *Murray's Lessee*, *supra*); *see also id.* at 449 (noting that Congress may prescribe that the judges on legislative courts hold their offices "during good behavior").

As the Court held in *Freytag*, the Tax Court may be described as "an adjudicative body" because it adjudicates "to the exclusion of any other function." *Freytag*, 501 U.S. at 891. The Tax Court "is neither advocate nor rulemaker." *Id.*

The Tax Court has no prosecutorial discretion. In every case, the Tax Court's jurisdiction is invoked by the taxpayer, almost always in response to a notice issued by the IRS, which is a component of the Treasury Department. *E.g.*, I.R.C. §§ 6015(e), 6213(a), 6330(d).[8] There is no mechanism whatsoever that would allow the Tax Court to initiate a proceeding or to obtain personal jurisdiction over a taxpayer who does

---

[8] In certain cases, a taxpayer who has requested administrative action, but who has received no response within a given timeframe, has a statutory right to petition the Tax Court without first receiving a notice. I.R.C. §§ 6015(e), 7428(a)(1).

not choose to file a petition.  The Tax Court may not increase the amount of tax due beyond that which was shown on the administrative notice of deficiency unless counsel for the Secretary of the Treasury first asserts a claim for the additional amount.  I.R.C. §§ 6214(a), 7452.  Thus, the classically executive Treasury Department retains the discretion to limit the amount of tax in dispute throughout Tax Court proceedings.

The Tax Court makes no laws and administers no policies.  Like a district court, the Tax Court can act only by issuing opinions and decisions, which, on legal matters, are subject to *de novo* review in the Article III courts.  To be sure, the relative independence of the Tax Court and the availability of appellate review in the Article III courts constrain the President's ability to assess and collect *more* tax from any taxpayer than is due under the internal revenue laws established by Congress.  But any such over-collection would encroach upon Congress's constitutional "Power To lay and collect Taxes, Duties, Imposts and Excises."  Art. I, § 8, cl., 1.  The Constitution does not require that the President have the power to collect taxes in amounts beyond those properly determined under the law enacted by Congress.

-48-

For these reasons, the Supreme Court has already effectively held

that the Tax Court is a "legislative court," as that term is used in

*Bakelite*, or a "quasi-judicial" body, as that term is used in *Free*

*Enterprise Fund*, 561 U.S. at 493, and *Humphrey's Executor*, 295 U.S. at

627, when it held, in *Freytag*, 501 U.S. at 891, that, under the

Appointments Clause, the Tax Court was not a "department" but a

"court of the United States."

### 4.    The President retains responsibility for the prompt collection of the revenues

The President's limited power to remove Tax Court judges does,

however, leave him responsible for the prompt collection of revenues,

long recognized as an Executive responsibility.

The Constitution assigns the taxing power to Congress, Art. I, § 8,

cl. 1, but the responsibility for assessing and collecting the tax due

under the laws passed by Congress lies with the Executive Branch.  As

the Supreme Court explained in *Bull*, the Executive's power to assess

and collect taxes administratively, prior to judicial review, reflects the

understanding that "taxes are the lifeblood of government, and their

prompt and certain availability an imperious need."  *Bull*, 295 U.S. at

259-60; *see also G.M. Leasing Corp. v. United States*, 429 U.S. 338, 352,

n. 18 (1977) ("the very existence of government depends upon the prompt collection of the revenues"); *Phillips v. Commissioner*, 283 U.S. 589, 596 (1931) (identifying the "underlying principle" in *Murray's Lessee* as "the need of the government promptly to secure its revenues"); *Springer v. United States*, 102 U.S. 586, 593-94 (1881).

At the level of the individual taxpayer, however, due process might seem to call for some level of independent review prior to summary administrative action. The Tax Court has repeatedly been held to provide this level of review. *Flora*, 362 U.S. at 163 ("one purpose of Congress in establishing the Board" of Tax Appeals "was to furnish a forum where full payment of the assessment would not be a condition precedent to suit"); *Phillips*, 283 U.S. at 599 (Tax Court "protect[s] the [taxpayer] against improper administrative action").

The Executive retains ongoing responsibility for prompt collection of adequate revenue, however, because I.R.C. § 7443(f) permits the President to remove a Tax Court judge for, *inter alia*, "inefficiency" or "neglect of duty." And (although the Commissioner of Internal Revenue may exercise his discretion to delay collection of the tax determined by the Tax Court) as a matter of law, appeal from the Tax Court to an

-50-

Article III court stays collection only if the taxpayer files a bond.  I.R.C.

§ 7485.  Thus, the President's power to remove Tax Court judges for

inefficiency and delay, coupled with his inability to use at-will removal

power to dictate the tax due from any particular taxpayer, reflects the

constitutional division of power between the Legislative Branch (which

sets the amount of tax due, Art. I, § 8, cl. 1) and the Executive Branch

(which must ensure the prompt collection of adequate revenue).  *See*

*Murray's Lessee*, 59 U.S. at 277.

### III

**The Tax Court was not obliged to decide whether the joint returns filed for taxpayer's 2013, 2014, and 2015 tax years were valid**

#### A.    Relief from joint and several liability under I.R.C. § 6015, in general

All individuals are subject to tax on their taxable income.  I.R.C.

§ 1(b), (c) (unmarried individuals), 1(d) (married individuals who do not

file joint returns).  Married individuals may choose to file joint income

tax returns.  I.R.C. §§ 1(a), 6013(a).  When a joint return is made, the

tax due is computed "on the aggregate income" of both spouses.  I.R.C.

§ 6013(d)(3).  Generally, but not always, married individuals will have a

lower tax rate if they file jointly than if they do not.  *Sleeth*, 991 F.3d at

1205; I.R.C. § 1(a) and (d).  By choosing to file jointly, married

individuals assume joint and several liability for the tax.  *Sleeth*, 991

F.3d at 1205; I.R.C. § 6013(d)(3).  This means that each spouse can be

held liable for the entire amount of any unpaid tax liability regardless

of which spouse was responsible for the income reported on the return.

*Sleeth*, 991 F.3d at 1205.  The rule of joint and several liability is "an

important adjunct to the privilege of filing joint returns."  *Sonnenborn*

*v. Commissioner*, 57 T.C. 373, 381 (1971).  But the rule of joint and

several liability "has its limits."  *Sleeth*, 991 F.3d at 1205.  Section 6015

of the Code permits taxpayers to be relieved of this type of joint and

several liability.

There are three distinct types of "innocent spouse" relief, provided

by three separate subsections of I.R.C. § 6015—(b), (c), and (f).  Section

6015(b) provides that relief is available if (i) there is an understatement

of tax attributable to the erroneous items of one individual filing the

joint return; (ii) the other individual filing the joint return did not

know, and had no reason to know, of the understatement at the time of

signing the return; (iii) it would be inequitable to hold such other

individual liable for the resulting deficiency in tax; and (iv) such other

-52-

individual elects the relief provided.  I.R.C.  §  6015(b)(1)(B), (C), (D), (E).

Separately, § 6015(c) allows a taxpayer who has filed a joint income tax return to elect "separate liability" relief "for any deficiency," *i.e.*, any understatement of tax, if he was no longer married, was legally separated or was not a member of the same household as his spouse during the 12-month period ending on the date the election is filed. I.R.C. § 6015(c)(3)(A)(i).  Tax liability is generally apportioned between the spouses, based on their allocable shares of the income reported on a joint return, under a formula set forth in § 6015(d).

If a taxpayer is not eligible for relief under subsection (b) or (c) of § 6015, relief may be available under subsection (f).  That subsection provides that, under "procedures prescribed by the Secretary," if "taking into account all the facts and circumstances, it is inequitable to hold the individual liable for any unpaid tax or any deficiency (or any portion of either)," and the taxpayer does not qualify for relief under subsection (b) or (c), the Secretary "may relieve [the taxpayer] of such liability."  I.R.C. § 6015(f)(1) and (2).

-53-

**B.    The Tax Court properly denied relief because the unpaid tax is tax imposed by Congress on taxpayer's own income**

The relief available under all three subsections of I.R.C. § 6015 is structured to relieve married joint filers of tax liabilities attributable to the *other* spouse's income, not to relieve married taxpayers of tax liabilities attributable to their own income.[9]  Since the tax here at issue was tax imposed by Congress on taxpayer's own Social Security income, the Tax Court properly denied relief without reaching the issue whether the joint returns were valid.

Taxpayer claims that, in every case, the "plain language" of I.R.C. § 6015 requires the Courts or the Service to determine whether the joint returns are valid.  (Br. 48.)  But taxpayer misreads the passages of I.R.C. § 6015(a), (b), and (c) upon which she relies.  To be sure, the *grant* of relief under subsections (b) and (c) is contingent on the filing of a joint return.  I.R.C. § 6015(a)(1), (b)(1)(A), (c)(1).  But the Tax Court did not grant relief here:  the court denied relief.  And since subsections (b)

-----

[9]  Notably, there is no equivalent statute permitting unmarried taxpayers to request relief from liability for taxes levied by Congress on their own income.

and (c) both provide elaborate multi-part tests, requiring the taxpayer to satisfy more than one condition, when the tax taxpayer seeks to avoid is tax based on her own income, it is possible to *deny* relief without analyzing every part of the statutory test.

By statute, relief under subsection (b) is available only if the understatement of tax is attributable to the tax item of the spouse who is *not* requesting relief. Section 6015(b)(1)(B) limits relief to an "understatement of tax attributable to erroneous items of one individual filing the joint return," while section 6015(b)(1)(C) further limits the relief to circumstances where "the other individual filing the joint return" requests relief. Similarly, subsection (c) allows relief only for individuals who are no longer married to the person with whom they made a joint return, and only for any deficiency in tax "properly allocable," under statutory rules, to the spouse *not* requesting relief. I.R.C. § 6015(c)(1), (d). Because the liability from which taxpayer is seeking relief here is attributable to her own Social Security income, a point she does not dispute in her brief on appeal, the Tax Court properly denied relief under both of these subsections.

-55-

Section 6015(f) provides that, under "procedures prescribed by the Secretary," if, "taking into account all the facts and circumstances, it is inequitable to hold the individual liable for any unpaid tax or any deficiency (or any portion of either)," and the taxpayer does not qualify for relief under subsection (b) or (c), the Secretary "may relieve [the taxpayer] of such liability." The Commissioner has prescribed procedures for granting the equitable relief, as contemplated in the statute, in Revenue Procedure 2013-34, 2013-43 I.R.B. 397 (2013). Neither this Court nor the Tax Court is bound by the revenue procedure, but both have treated it as a persuasive account of relevant factors. *Sleeth v. Commissioner*, 991 F.3d 1201, 1205 (11th Cir. 2021); *Pullins v. Commissioner*, 136 T.C. 432, 438-39 (2011); *see also Stubbs, Overbeck & Assocs., Inc. v. United States*, 445 F.2d 1142, 1146-47 (5th Cir. 1971) (holding that a revenue ruling "may be helpful in interpreting a statute" but does not have "the force and effect of law"); *Lee Eng'g Supply Co. v. Commissioner*, 101 T.C. 189, 194 n.3 (1993) (*Stubbs* applies to IRS Revenue Procedures as well as Revenue Rulings).

-56-

Under Rev. Proc. 2013-34, equitable relief under subsection (f) is available only for "the portion of the liability attributable to the non-requesting spouse." Rev. Proc. 2013-34, sec. 4.01(7). To be sure, the revenue procedure contemplates that in certain rare cases it may be inequitable to hold a married taxpayer liable for tax on her own income. *See* Rev. Proc. 2013-34, sec. 4.01(7)(a)-(e) (listing circumstances, such as nominal ownership of income-producing property controlled by the other spouse, where this might be appropriate). But taxpayer has not argued that any of the circumstances listed in this subpart of the Revenue Procedure exist here. And she has not argued that the circumstances of this case otherwise call for her to be relieved of the tax imposed by Congress on her own income. Accordingly, the Tax Court properly denied relief under subsection (f) as well.

In sum, because the income giving rise to the unpaid tax was income attributable to taxpayer herself, relief from joint and several liability is not available under subpart (b), (c), or (f) of I.R.C. § 6015. Accordingly, the Tax Court did not need to reach the issue whether the returns were valid in order to properly deny relief under subsections (b), (c), and (f).

### C.    Taxpayer's arguments to the contrary are misconceived

#### 1.    Taxpayer's liability for tax stems from the Tax Code, not from the filing of a joint return

As we have demonstrated (Part III.B, *supra*), the Tax Court correctly concluded that taxpayer was not eligible for relief because "[t]he tax liabilities [she] seeks relief from are solely attributable to her income." (Doc. 63 at 9.)  On appeal, taxpayer contends that in her view that the Tax Court's "[f]inding that the liabilities are attributable" to her "necessarily requires a determination that the joint tax return validly imposed the liabilities." (Br. 47 (emphasis omitted).)  As taxpayer puts it, "Forsooth, it is elementary that without a valid return, there can be no valid assessment." (Br. 48-49.)  Thus, her theory is that "for each appliable year," if no "valid joint return was filed . . . there could be no liability at issue." (Br. 49.)

Taxpayer misunderstands the source of her liability for tax.  Her tax liabilities are not imposed by the return.  They are imposed by Congress.  As explained above, Congress has imposed a tax on the taxable income of "every married individual," regardless of whether

-58-

they file joint returns.  I.R.C. § 1(a), (d).[10]  The taxable income on which

that tax is imposed includes Social Security benefits, according to the

equation codified by Congress in I.R.C. § 86.  *See* I.R.C. §§ 1, 61, 63, 86.

Accordingly, taxpayer is liable for tax on her Social Security income

regardless whether she filed jointly with her late husband during the

tax years at issue and regardless whether the administrative

assessment she contests was valid.  Indeed, the Supreme Court has

recently reiterated the distinction between a tax *liability* and a tax

*assessment*, explaining that "[u]nder the [Internal Revenue] Code, a

taxpayer's 'liability' for unpaid taxes arises before the IRS makes an

official 'assessment' of what the delinquent taxpayer owes."  *Polselli v.

IRS*, 598 U.S. 432, 442 (2023).

　　In some innocent spouse cases where the taxpayer requesting

relief did not file a separate return, as Wright did not here, a finding

that the joint return is invalid will actually be less favorable for the

taxpayer than a grant of relief.  Because tax is imposed by Congress,

---

[10]  Congress has also imposed a tax on the taxable income of all
unmarried taxpayers, I.R.C. §§ 1(b), (c), 2(b), but because taxpayer was
married during the years at issue, that tax is not relevant to this case.

not by the return, the failure to file a valid return does not relieve a taxpayer of liability for tax. The period within which the Commissioner may assess a tax does not begin to run until a return is filed, I.R.C. § 6501(c)(3), and a taxpayer who fails to file a return may also be liable for failure-to-file penalties under I.R.C. § 6651(a).

Understanding this, courts will sometimes grant equitable relief under subsection (f) without reaching the issue whether a suspect return was valid. In the *Neal* case, for example, this Court noted that the taxpayer requesting relief had testified that her husband had forged her signature on the joint return, but it did not reach the issue whether the return was valid. *Neal*, 557 F.3d at 1266 n.4. Instead, this Court, noting that the unpaid tax there at issue was attributable to the income of the non-requesting spouse, upheld the Tax Court's grant of relief under I.R.C. § 6015(f). *Id.* at 1277, 1278.

In this case, the unpaid tax is attributable to taxpayer's own Social Security income. A married taxpayer cannot avoid liability for tax on her own income simply by failing to file a tax return, no more than an unmarried taxpayer can. On these facts, therefore, the Tax Court did not abuse its discretion in concluding that, regardless of other

-60-

facts and circumstances, the Commissioner did not abuse his discretion in denying relief under I.R.C. § 6015(f).[11]

## 2. Taxpayer's reliance on the Revenue Procedure is misplaced

Taxpayer also relies on IRS Revenue Procedure 2013-34 to argue that the Tax Court was obliged to decide whether the return was valid. (Br. 50-51.)  In that Revenue Procedure, IRS employees evaluating innocent spouse claims are instructed that "[i]f . . . there is no valid return with respect to the requesting spouse," then "section 6015 does not apply and is not necessary for obtaining relief."  Rev. Proc. 2013-34 § 2.03.  Thus, if the individual requesting relief alleges duress, IRS employees are instructed to "first make a determination as to the validity of the joint return" and, if the Service determines that the joint

---

[11] The *amount* of tax imposed on the Social Security income might have been different if taxpayer had filed separately.  *See* I.R.C. § 86(c) (making the filing of a joint return part of the computation).  Such a contention might have been raised as part of taxpayer's claim for equitable relief; if it had been, the Tax Court would have had the opportunity to compute the difference, if any.  *See* Tax Ct. R. 155 (concerning computations).  But taxpayer did not raise any such contention, either in the Tax Court or in her opening brief on appeal. Any such claim should therefore be deemed waived.  *Transamerica Leasing, Inc. v. Inst. of London Underwriters*, 430 F.3d 1326, 1331 n. 4 (11th Cir. 2005).

-61-

return was not validly filed, "deny the request for section 6015 relief."

*Id.*  The relief is to be denied because, if no joint return was filed, relief

from joint and several liability "is not necessary."  *Id.*

Because the IRS is a classic Executive Branch agency, it has the

inherent power to initiate a new investigation into one matter (*e.g.*, the

validity of a particular tax return) in response to receiving a request

regarding a related matter (*e.g.*, the availability of relief under I.R.C.

§ 6015).  But the Tax Court, which is independent of the IRS and indeed

of the Treasury, has no power to initiate a new investigation into the

validity of the underlying tax assessment, and the Commissioner

cannot grant the Tax Court that power by issuing a Revenue Procedure.

Congress set the parameters of Tax Court jurisdiction in the text of

I.R.C. § 6015(e), explicitly confining jurisdiction to "the appropriate

relief available to the individual under this section," and the Tax Court

has properly confined itself to matters within those statutory

parameters.  Indeed, in the case *Block v. Commissioner*, 120 T.C. 62

(2003), a taxpayer filed a stand-alone innocent spouse proceeding but

sought to raise, as a threshold matter, the issue whether the underlying

assessment was timely.  If the assessment was untimely, he reasoned,

no relief from the assessed liabilities was possible.  *Id.*  The Tax Court

turned to the text of I.R.C. § 6015(e) and correctly held that it confines

the court's jurisdiction to "the appropriate relief available to the

individual *under this section.*"  *Id.* at 65.

So too here, the Tax Court has jurisdiction under I.R.C. § 6015(e)

only to determine the appropriate relief under the three operative

subsections of I.R.C. § 6015, *viz.*, subsections (b), (c), and (f).  As we

have demonstrated, relief was properly denied because the unpaid tax

is attributable to taxpayer's own income.  No further findings are

necessary.

### 3.   The Tax Court cases upon which taxpayer relies are distinguishable

Taxpayer relies (Br. 49-50) on two older Tax Court cases, both

decided under the predecessor to I.R.C. § 6015.  But both of these cases

are distinguishable from taxpayer's situation because both concern

circumstances where the wife sought relief from liability for taxes

attributable to the income of her husband.

In the more recent of the cases relied upon by taxpayer, *Snyder v.

Commissioner*, T.C. Memo. 1983-751, 1983 WL 14739 (1983), the

unpaid tax was attributable to the husband's extensive business

-63-

ventures.  In the other case, *Groves v. Commissioner*, T.C. Memo. 1957-196, 1957 WL 810 (1957), the taxes at issue also arose "from unreported income of [the petitioner's] estranged husband."  The wife requesting relief was held to be liable for tax on her own income, but that tax was covered by the amounts withheld from her wages.  *Id*.  This case presents the opposite scenario.  Here, it was taxpayer's late husband who had wage income from which taxes were withheld in an amount that was more than sufficient to cover his own liability for tax; it was taxpayer's income that gave rise to the unpaid liability.  Thus, *Groves* and *Snyder* provide no support for taxpayer's contention that I.R.C. § 6015 permits her to be relieved of tax on her own income.

The same mistake undermines taxpayer's contention (Br. 50-51) that, if no valid joint return was filed, this proceeding is moot. Taxpayer relies on the Tax Court case *Jones v. Commissioner*, T.C. Memo. 2019-139 (2019), where the Tax Court first determined that the joint 2010 return was valid before turning to the issue whether she was entitled to innocent spouse relief.  But even before considering the validity of the return, the Tax Court observed that the return at issue, for 2010, reflected only $15,246 of W-2 income for the wife, alongside

$170,109 of business income for the husband. *Jones* at *3. Accordingly, in *Jones*, if no valid joint return had been filed, the spouse requesting relief would not have been liable for the unpaid tax on the business income in the first place. But because the unpaid tax at issue here is tax attributable to taxpayer's own Social Security income, she is liable for tax on that income regardless of whether she filed a joint return.

# CONCLUSION

The decision of the Tax Court is correct and should be affirmed.

Respectfully submitted,

DAVID A. HUBBERT
  *Deputy Assistant Attorney General*

/s/ Bethany B. Hauser

| | |
|---|---|
| JACOB EARL CHRISTENSEN | (202) 307-0878 |
| BETHANY B. HAUSER | (202) 514-2830 |

  *Attorneys*
  *Tax Division*
  *Department of Justice*
  *Post Office Box 502*
  *Washington, D.C. 20044*
  *Appellate.TaxCivil@usdoj.gov*
  *Bethany.B.Hauser@usdoj.gov*

JULY 22, 2024

15256054.1

# CERTIFICATE OF COMPLIANCE

## With Type-Volume Limit, Typeface Requirements, and Type-Style Requirements

Check the appropriate box in section 1, and check the box in section 2.

### 1.  Type-Volume

[X]   This document complies with the word limit of FRAP 32(a)(7)(B) because, excluding the parts of the document exempted by FRAP 32(f), this document contains **12,924** words.

**or**

[ ]   This brief complies with the line limit of FRAP ____ because, excluding the parts of the brief exempted by FRAP 32(f) and ____, this brief uses a monospaced typeface and contains ____ lines of text.

### 2.  Typeface and Type-Style

[X]   This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6).

(s)   __s/Bethany B. Hauser_____

Attorney for  __the Commissioner of Internal Revenue___

Dated:  _____July 22, 2024_____

-67-

## ADDENDUM

### § 6015. Relief from joint and several liability on joint return

**(a) In general.**—Notwithstanding section 6013(d)(3)—

(1) an individual who has made a joint return may elect to seek relief under the procedures prescribed under subsection (b); and

(2) if such individual is eligible to elect the application of subsection (c), such individual may, in addition to any election under paragraph (1), elect to limit such individual's liability for any deficiency with respect to such joint return in the manner prescribed under subsection (c).

Any determination under this section shall be made without regard to community property laws.

**(a) Procedures for relief from liability applicable to all joint filers.**—

**(1) In general.**—Under procedures prescribed by the Secretary, if—

(A) a joint return has been made for a taxable year;

(B) on such return there is an understatement of tax attributable to erroneous items of one individual filing the joint return;

(C) the other individual filing the joint return establishes that in signing the return he or she did not know, and had no reason to know, that there was such understatement;

(D) taking into account all the facts and circumstances, it is inequitable to hold the other individual liable for the deficiency in tax for such taxable year attributable to such understatement; and

-68-

(E) the other individual elects (in such form as the Secretary may prescribe) the benefits of this subsection not later than the date which is 2 years after the date the Secretary has begun collection activities with respect to the individual making the election,

then the other individual shall be relieved of liability for tax (including interest, penalties, and other amounts) for such taxable year to the extent such liability is attributable to such understatement.

**(2) Apportionment of relief.**—If an individual who, but for paragraph (1)(C), would be relieved of liability under paragraph (1), establishes that in signing the return such individual did not know, and had no reason to know, the extent of such understatement, then such individual shall be relieved of liability for tax (including interest, penalties, and other amounts) for such taxable year to the extent that such liability is attributable to the portion of such understatement of which such individual did not know and had no reason to know.

**(3) Understatement.**—For purposes of this subsection, the term "understatement" has the meaning given to such term by section 6662(d)(2)(A).

**(c) Procedures to limit liability for taxpayers no longer married or taxpayers legally separated or not living together.**—

**(1) In general.**—Except as provided in this subsection, if an individual who has made a joint return for any taxable year elects the application of this subsection, the individual's liability for any deficiency which is assessed with respect to the return shall not exceed the portion of such deficiency properly allocable to the individual under subsection (d).

**(2) Burden of proof.**—Except as provided in subparagraph (A)(ii) or (C) of paragraph (3), each individual who elects the application of this subsection shall have the burden of proof with

-69-

respect to establishing the portion of any deficiency allocable to such individual.

**(3) Election.**—

(A) Individuals eligible to make election.—

(i) In general.—An individual shall only be eligible to elect the application of this subsection if—

(I) at the time such election is filed, such individual is no longer married to, or is legally separated from, the individual with whom such individual filed the joint return to which the election relates; or

(II) such individual was not a member of the same household as the individual with whom such joint return was filed at any time during the 12-month period ending on the date such election is filed.

\*　　\*　　\*

(C) Election not valid with respect to certain deficiencies.—If the Secretary demonstrates that an individual making an election under this subsection had actual knowledge, at the time such individual signed the return, of any item giving rise to a deficiency (or portion thereof) which is not allocable to such individual under subsection (d), such election shall not apply to such deficiency (or portion). This subparagraph shall not apply where the individual with actual knowledge establishes that such individual signed the return under duress.

\*　　\*　　\*

**(d) Allocation of deficiency.**—For purposes of subsection (c).—

**(1) In general.**—The portion of any deficiency on a joint return allocated to an individual shall be the amount which bears the same ratio to such deficiency as the net amount of items taken into account in computing the deficiency and allocable to the individual under paragraph (3) bears to the net amount of all items taken into account in computing the deficiency.

**(2) Separate treatment of certain items.**—If a deficiency (or portion thereof) is attributable to—

(A) the disallowance of a credit; or

(B) any tax (other than tax imposed by section 1 or 55) required to be included with the joint return;

and such item is allocated to one individual under paragraph (3), such deficiency (or portion) shall be allocated to such individual. Any such item shall not be taken into account under paragraph (1).

**(3) Allocation of items giving rise to the deficiency.**—For purposes of this subsection—

**(A) In general.**—Except as provided in paragraphs (4) and (5), any item giving rise to a deficiency on a joint return shall be allocated to individuals filing the return in the same manner as it would have been allocated if the individuals had filed separate returns for the taxable year.

\*    \*    \*

**(e) Petition for review by Tax Court.**—

**(1) In general.**—In the case of an individual against whom a deficiency has been asserted and who elects to have subsection (b) or (c) apply, or in the case of an individual who requests equitable relief under subsection (f)—

**(A) In general.**—In addition to any other remedy provided by law, the individual may petition the Tax Court (and the Tax Court shall have jurisdiction) to determine the appropriate relief available to the individual under this section if such petition is filed—

(i) at any time after the earlier of—

(I) the date the Secretary mails, by certified or registered mail to the taxpayer's last known address, notice of the Secretary's final determination of relief available to the individual, or

(II) the date which is 6 months after the date such election is filed or request is made with the Secretary, and

(ii) not later than the close of the 90th day after the date described in clause (i)(I).

**(B) Restrictions applicable to collection of assessment.**—

**(i) In general.**—Except as otherwise provided in section 6851 or 6861, no levy or proceeding in court shall be made, begun, or prosecuted against the individual making an election under subsection (b) or (c) or requesting equitable relief under subsection (f) for collection of any assessment to which such election or request relates until the close of the 90th day referred to in subparagraph (A)(ii), or, if a petition has been filed with the Tax Court under subparagraph (A), until the decision of the Tax Court has become final. Rules similar to the rules of section 7485 shall apply with respect to the collection of such assessment.

\*       \*       \*

-72-

**(2) Suspension of running of period of limitations.**—The running of the period of limitations in section 6502 on the collection of the assessment to which the petition under paragraph (1)(A) relates shall be suspended—

      (A) for the period during which the Secretary is prohibited by paragraph (1)(B) from collecting by levy or a proceeding in court and for 60 days thereafter, and

      (B) if a waiver under paragraph (5) is made, from the date the claim for relief was filed until 60 days after the waiver is filed with the Secretary.

\* \* \*

**(7) Standard and scope of review.**—Any review of a determination made under this section shall be reviewed de novo by the Tax Court and shall be based upon—

      (A) the administrative record established at the time of the determination, and

      (B) any additional newly discovered or previously unavailable evidence.

**(f) Equitable relief.**—

      **(1) In general.**—Under procedures prescribed by the Secretary, if—

      (A) taking into account all the facts and circumstances, it is inequitable to hold the individual liable for any unpaid tax or any deficiency (or any portion of either), and

      (B) relief is not available to such individual under subsection (b) or (c),

the Secretary may relieve such individual of such liability.

**(2) Limitation.**—A request for equitable relief under this subsection may be made with respect to any portion of any liability that—

>   (A) has not been paid, provided that such request is made before the expiration of the applicable period of limitation under section 6502, or

>   (B) has been paid, provided that such request is made during the period in which the individual could submit a timely claim for refund or credit of such payment.

## § 6212. Notice of deficiency

**(a) In general.**—If the Secretary determines that there is a deficiency in respect of any tax imposed by subtitles A or B or chapter 41, 42, 43, or 44 he is authorized to send notice of such deficiency to the taxpayer by certified mail or registered mail. Such notice shall include a notice to the taxpayer of the taxpayer's right to contact a local office of the taxpayer advocate and the location and phone number of the appropriate office.

## § 6213. Restrictions applicable to deficiencies; petition to Tax Court

**(a) Time for filing petition and restriction on assessment.**—Within 90 days, or 150 days if the notice is addressed to a person outside the United States, after the notice of deficiency authorized in section 6212 is mailed (not counting Saturday, Sunday, or a legal holiday in the District of Columbia as the last day), the taxpayer may file a petition with the Tax Court for a redetermination of the deficiency. Except as otherwise provided in section 6851, 6852, or 6861 no assessment of a deficiency in respect of any tax imposed by subtitle A, or B, chapter 41, 42, 43, or 44 and no levy or proceeding in court for its collection shall be made, begun, or prosecuted until such notice has been mailed to the taxpayer, nor until the expiration of such 90-day or 150-day period, as the case may be, nor, if a petition has been filed with the Tax Court, until the decision of the Tax Court has become final. Notwithstanding the provisions of section 7421(a), the making of such

assessment or the beginning of such proceeding or levy during the time such prohibition is in force may be enjoined by a proceeding in the proper court, including the Tax Court, and a refund may be ordered by such court of any amount collected within the period during which the Secretary is prohibited from collecting by levy or through a proceeding in court under the provisions of this subsection. The Tax Court shall have no jurisdiction to enjoin any action or proceeding or order any refund under this subsection unless a timely petition for a redetermination of the deficiency has been filed and then only in respect of the deficiency that is the subject of such petition. Any petition filed with the Tax Court on or before the last date specified for filing such petition by the Secretary in the notice of deficiency shall be treated as timely filed.

## § 6214. Determinations by Tax Court

**(a) Jurisdiction as to increase of deficiency, additional amounts, or additions to the tax.**—Except as provided by section 7463, the Tax Court shall have jurisdiction to redetermine the correct amount of the deficiency even if the amount so redetermined is greater than the amount of the deficiency, notice of which has been mailed to the taxpayer, and to determine whether any additional amount, or any addition to the tax should be assessed, if claim therefor is asserted by the Secretary at or before the hearing or a rehearing.

## § 7441. Status

There is hereby established, under article I of the Constitution of the United States, a court of record to be known as the United States Tax Court. The members of the Tax Court shall be the chief judge and the judges of the Tax Court. The Tax Court is not an agency of, and shall be independent of, the executive branch of the Government.

## § 7442. Jurisdiction

The Tax Court and its divisions shall have such jurisdiction as is conferred on them by this title, by chapters 1, 2, 3, and 4 of the Internal Revenue Code of 1939, by title II and title III of the Revenue Act of 1926 (44 Stat. 10-87), or by laws enacted subsequent to February 26, 1926.

## § 7443. Membership

**(a) Number.**—The Tax Court shall be composed of 19 members.

**(b) Appointment.**—Judges of the Tax Court shall be appointed by the President, by and with the advice and consent of the Senate, solely on the grounds of fitness to perform the duties of the office.

**(c) Salary.**—

(1) Each judge shall receive salary at the same rate and in the same installments as judges of the district courts of the United States.

(2) For rate of salary and frequency of installment see section 135, title 28, United States Code, and section 5505, title 5, United States Code.

**(d) Expenses for travel and subsistence.**—Judges of the Tax Court shall receive necessary traveling expenses, and expenses actually incurred for subsistence while traveling on duty and away from their designated stations, subject to the same limitations in amount as are now or may hereafter be applicable to the United States Court of International Trade.

**(e) Term of office.**—The term of office of any judge of the Tax Court shall expire 15 years after he takes office.

**(f) Removal from office.**—Judges of the Tax Court may be removed by the President, after notice and opportunity for public hearing, for inefficiency, neglect of duty, or malfeasance in office, but for no other cause.

**(g) Disbarment of removed judges.**—A judge of the Tax Court removed from office in accordance with subsection (f) shall not be permitted at any time to practice before the Tax Court.

## § 7444. Organization

**(a) Seal.**—The Tax Court shall have a seal which shall be judicially noticed.

**(b) Designation of chief judge.**—The Tax Court shall at least biennially designate a judge to act as chief judge.

**(c) Divisions.**—The chief judge may from time to time divide the Tax Court into divisions of one or more judges, assign the judges of the Tax Court thereto, and in case of a division of more than one judge, designate the chief thereof. If a division, as a result of a vacancy or the absence or inability of a judge assigned thereto to serve thereon, is composed of less than the number of judges designated for the division, the chief judge may assign other judges to the division or direct the division to proceed with the transaction of business without awaiting any additional assignment of judges thereto.

**(d) Quorum.**—A majority of the judges of the Tax Court or of any division thereof shall constitute a quorum for the transaction of the business of the Tax Court or of the division, respectively. A vacancy in the Tax Court or in any division thereof shall not impair the powers nor affect the duties of the Tax Court or division nor of the remaining judges of the Tax Court or division, respectively.

## § 7447. Retirement

\*    \*    \*

**(b) Retirement.—**

(1) Any judge shall retire upon attaining the age of 70.

\*    \*    \*

## § 7452. Representation of parties

The Secretary shall be represented by the Chief Counsel for the Internal Revenue Service or his delegate in the same manner before the Tax Court as he has heretofore been represented in proceedings before

such Court. The taxpayer shall continue to be represented in accordance with the rules of practice prescribed by the Court. No qualified person shall be denied admission to practice before the Tax Court because of his failure to be a member of any profession or calling.

## § 7453. Rules of practice, procedure, and evidence

Except in the case of proceedings conducted under section 7436(c) or 7463, the proceedings of the Tax Court and its divisions shall be conducted in accordance with such rules of practice and procedure (other than rules of evidence) as the Tax Court may prescribe and in accordance with the Federal Rules of Evidence.

## § 7482. Courts of review

**(a) Jurisdiction.—**

**(1) In general.—**The United States Courts of Appeals (other than the United States Court of Appeals for the Federal Circuit) shall have exclusive jurisdiction to review the decisions of the Tax Court, except as provided in section 1254 of Title 28 of the United States Code, in the same manner and to the same extent as decisions of the district courts in civil actions tried without a jury; and the judgment of any such court shall be final, except that it shall be subject to review by the Supreme Court of the United States upon certiorari, in the manner provided in section 1254 of Title 28 of the United States Code.

\*    \*    \*

## § 7485. Bond to stay assessment and collection

**(a) Upon notice of appeal.—**Notwithstanding any provision of law imposing restrictions on the assessment and collection of deficiencies, the review under section 7483 shall not operate as a stay of assessment or collection of any portion of the amount of the deficiency determined by the Tax Court unless a notice of appeal in respect of such portion is duly filed by the taxpayer, and then only if the taxpayer—

-78-

     (1) on or before the time his notice of appeal is filed has filed with the Tax Court a bond in a sum fixed by the Tax Court not exceeding double the amount of the portion of the deficiency in respect of which the notice of appeal is filed, and with surety approved by the Tax Court, conditioned upon the payment of the deficiency as finally determined, together with any interest, additional amounts, or additions to the tax provided for by law, or

     (2) has filed a jeopardy bond under the income or estate tax laws.

If as a result of a waiver of the restrictions on the assessment and collection of a deficiency any part of the amount determined by the Tax Court is paid after the filing of the appeal bond, such bond shall, at the request of the taxpayer, be proportionately reduced.