[DO NOT PUBLISH]

# In the
# United States Court of Appeals
## For the Eleventh Circuit

_____

No. 24-10563

_____

FANNIE WRIGHT,

                                      Petitioner-Appellant,

*versus*

COMMISSIONER OF INTERNAL REVENUE,

                                      Respondent-Appellee.

_____

Petition for Review of a Decision of the
U.S. Tax Court
Agency No. 21509-18

_____

Before ROSENBAUM, NEWSOM, and MARCUS, Circuit Judges.

PER CURIAM:

    This personal income tax dispute arises out of unpaid deficiencies in joint federal income tax returns that were filed in the Petitioner, Fannie Wright's name for tax years 2013, 2014, and 2015. Ms. Wright appeals from a decision by the U.S. Tax Court, affirming a determination made by the Internal Revenue Service ("IRS"), that Ms. Wright is not entitled to innocent spouse tax relief under Section 6015 of Title 26 of the Internal Revenue Code. The Petitioner claims that the Tax Court erred by denying her innocent spouse relief without first making a factual finding about the validity of the joint income tax returns for the years in question. Ms. Wright also raises a constitutional question, challenging a provision of the Internal Revenue Code, Section 7443(f) of Title 26, which establishes that a tax court judge may be removed by the President only "for inefficiency, neglect of duty, or malfeasance in office." Ms. Wright claims that this provision of law impermissibly restricts the President's Article II power to remove tax court judges in violation of separation of powers. In the alternative, Ms. Wright argues that the Tax Court does not exercise executive power and the President's for-cause removal power violates the prohibition on interbranch removal under separation of powers. Accordingly, she contends, we should strike this provision of law and grant her a new hearing in Tax Court before a different tax court judge.

    After careful review, we affirm the determination of the Tax Court. As for the merits, the Tax Court properly denied Ms.

Wright's petition: the taxpayer was not entitled to innocent spouse relief because the deficiencies at issue were solely allocable to her own social security income. The Tax Court was not required to rule on the validity of the joint tax returns before denying her innocent spousal relief. As for Ms. Wright's constitutional attack on Section 7443(f), the longstanding doctrine of constitutional avoidance counsels that we refrain from answering the removal question today because the taxpayer has failed to allege any harm based on the removal provision she contests.

## I.

These are the essential facts and procedural history surrounding this case. Ms. Wright was married to Willie Wright from 1973 until Mr. Wright's death in August 2016. Following their marriage, the Wrights filed joint federal income tax returns until 2006 or 2007 when they each began filing individual tax returns. In 2012, Ms. Wright suffered a workplace accident, stopped working, and began receiving social security income. Social security income is includable in gross income, and therefore subject to federal income tax. *See* I.R.C. §§ 61, 63, 86. But Ms. Wright claims that her attorney and tax return preparer both told her that she would not have to file tax returns after she stopped working.

Neither of the Wrights filed individual tax returns for the tax years of 2013 and 2014. Instead, they started filing joint federal tax returns again. The Wrights' 2013 and 2014 joint returns reported Mr. Wright's wage income, but did not report Ms. Wright's social security income, which amounted to approximately $18,881 in

2013 and $17,723 in 2014. The IRS therefore added Ms. Wright's social security income to the joint returns for 2013 and 2014 and sent respective notices of the deficiencies to the Wrights.

Ms. Wright claims that she was originally unaware that Mr. Wright filed joint returns for the 2013 and 2014 tax years. She says that when Mr. Wright asked her about filing jointly with him after she stopped working, she responded "no" because previously "he didn't want to file with me" and "I did not have to file."

In 2015, the Wrights again filed a joint tax return, but this time it included Ms. Wright's social security income as well as Mr. Wright's wage income for that year. It showed that the Wrights owed over one thousand dollars in tax due to Ms. Wright's previously unreported social security income. Then, in 2016, Mr. Wright died.

On January 11, 2017, Ms. Wright filed an administrative request for innocent spouse relief from joint and several liability for the 2013, 2014, and 2015 tax years. On June 14, 2017, the IRS issued a preliminary determination denying Ms. Wright's request for innocent spouse relief. The IRS explained to Ms. Wright that it was denying her innocent spouse relief because "[a]ll of the debt is linked to you. Relief generally isn't allowed on tax you owe on your own or jointly owned income." Ms. Wright appealed and, on August 6, 2018, the IRS Office of Appeals issued its final determination, denying Ms. Wright's request for innocent spouse relief because "[w]e generally can't grant relief on tax you owe for your income or deductions."

Ms. Wright timely petitioned the Tax Court challenging this determination. While her appeal was pending, she filed a motion to declare 26 U.S.C. § 7443(f) unconstitutional, arguing that it unlawfully restricts the President's power to remove tax court judges in violation of separation of powers. On December 27, 2023, the Tax Court denied the motion.

After trial, the Tax Court issued an opinion affirming the IRS's denial of innocent spouse relief for tax years 2013, 2014, and 2015. The court found that Ms. Wright failed to satisfy any of the requirements for innocent spouse relief found in Section 6015 (b), (c), or (f) of the Internal Revenue Code because the joint tax deficiencies for the years at issue were entirely traceable to Ms. Wright's own social security benefits.

Ms. Wright timely appealed that judgment to our Court.

## II.

In a standalone proceeding under Section 6015, we review a tax court's decision denying equitable relief for abuse of discretion, but we review any underlying questions of law *de novo* and findings of fact for clear error. *Sleeth v. Comm'r*, 991 F.3d 1201, 1204 (11th Cir. 2021); *Comm'r v. Neal*, 557 F.3d 1262, 1269 (11th Cir. 2009) ("We review interpretations of the Internal Revenue Code *de novo*, and we review the tax court's decision to grant or deny equitable relief for abuse of discretion, reviewing underlying questions of law *de novo* and findings of fact upon which the decision to grant equitable relief was made under the clearly erroneous standard." (citation modified)).

| 6 | Opinion of the Court | 24-10563 |

We start with the merits of Ms. Wright's petition. When a married couple files a joint income tax return, each spouse generally has joint and several liability for the entire amount of any unpaid tax liability regardless of each person's individual level of responsibility. *See* I.R.C. § 6013(d)(3); *Sleeth*, 991 F.3d at 1205. However, innocent spouse relief allows a spouse who filed jointly to be relieved of joint and several liability for unpaid joint tax liability under certain conditions. I.R.C. §§ 6015(b)–(f).

First, relief is available if (a) a joint return has been made for that year; (b) on that return there is an understatement of tax attributable to the erroneous items of one individual filing the joint return; (c) the other individual filing the joint return did not know, and had no reason to know, of the understatement at the time of signing the return; (d) it would be inequitable to hold such other individual liable for the resulting tax deficiency; and (e) the other individual also timely elects to seek innocent spouse relief. *Id.* § 6015(b).

Second, a taxpayer who has filed a joint income tax return can elect "separate liability" relief "for any deficiency" if she separated from her spouse and is not a member of the same household as her spouse within the year the joint return was filed. *Id.* § 6015(c). "For purposes of subsection (c)," "any item giving rise to a deficiency on a joint return shall be allocated to individuals filing the return in the same manner as it would have been allocated if the individuals had filed separate returns for the taxable year." *Id.* § 6015(d), (d)(3)(A).

Finally, if neither of the first two subsections applies, a taxpayer may nonetheless be eligible for innocent spouse relief if, "taking into account all the facts and circumstances, it is inequitable to hold the individual liable for any unpaid tax or any deficiency." *Id.* § 6015(f).

The Tax Court properly denied Ms. Wright innocent spouse relief under any of the relevant provisions of Section 6015 because the deficiencies were allocable solely to Ms. Wright's own social security income. Section 6015 is designed to relieve a married joint filer of tax liabilities attributable to her spouse's income, not those attributable to her own income. Relief under Section 6015(b) can only be granted for "understatement[s] of tax attributable to erroneous items of one individual filing the joint return," if "*the other individual* elects" to seek innocent spouse relief. *Id.* § 6015(b)(1)(B), (E) (emphasis added). Similarly, if an individual seeks innocent spouse relief under Section 6015(c), the items giving rise to the joint tax deficiency will be "allocated . . . in the same manner as it would have been allocated if the individuals had filed separate returns." *Id.* § 6015(d)(3)(A). Finally, the procedures for obtaining innocent spouse relief under Section 6015(f) clearly establish that relief is available only for "the portion of the liability attributable to the non-requesting spouse."[1] Rev. Proc. 2013-34, § 4.01(7), 2013-43 I.R.B. 397, 397; I.R.C. § 6015(f). Here, the deficiencies in the tax

---

[1] Although we are not bound by the revenue procedure, we have treated it as persuasive authority on the relevant factors for innocent spouse relief under Section 6015. *See Sleeth*, 991 F.3d at 1205.

years for 2013, 2014, and 2015 were the result of the Wrights' failure to report Ms. Wright's own social security income. The Tax Court properly determined that Ms. Wright was not entitled to innocent spouse relief for a liability that arose out of her own income.

Ms. Wright does not dispute that the deficiency at issue here was attributable to her own social security benefits. Instead, she argues that the Tax Court could not consider whether she "was entitled to relief under Section 6015 *unless* it found that, for each applicable year, a valid joint return was filed; otherwise, there could be no liability at issue." Therefore, she claims that "the decision below must be reversed and the case remanded for consideration of whether [Ms. Wright] consented to file jointly for each year at issue."

The Tax Court did not need to determine whether valid joint returns had been filed in order to deny Ms. Wright Section 6015 relief. As we've observed, Section 6015 (b), (c) and (f) impose conditions that a petitioner must satisfy in order to be eligible for innocent spouse relief. Because the income giving rise to the unpaid tax was Ms. Wright's own social security income, innocent spouse relief was not available to her. Whether valid joint returns were filed for the years at issue does not affect Ms. Wright's obligation to pay taxes on her own income. Her liability for a tax on social security income is imposed by Congress, which has levied a tax on taxable income of "every married individual" regardless of whether she files a return jointly with her spouse or files a return alone. I.R.C. § 1(a), (d). Taxable income includes social security

benefits precisely because Congress has codified the law that way. *See id.* §§ 61, 63, 86. Thus, Ms. Wright's liability flows from the way Congress has structured the law, regardless of whether she filed a tax return jointly, alone, or not at all for the tax years in question. *See, e.g.*, *United States v. Galletti*, 541 U.S. 114, 122 (2004) (noting that in the federal tax system "each taxpayer computes the tax due and then files the appropriate form of return along with the requisite payment," but even "where the [IRS] rejects the self-assessment of the taxpayer or discovers that the taxpayer has failed to file a return," the IRS nonetheless "calculates the proper amount of liability." (citation modified)). Simply put, the Tax Court did not need to determine whether the joint tax returns filed for years 2013, 2014, and 2015 were valid in order to deny her innocent spouse relief.[2]

---

[2] Ms. Wright also raised a jurisdictional argument that the Tax Court was required to determine whether she had filed valid joint returns with her husband for tax years 2013, 2014, and 2015. Citing *Jones v. Commissioner*, 118 T.C.M. (CCH) 341 (2019), Ms. Wright claims that a valid joint return is "necessarily . . . a jurisdictional element," "because without a valid joint return, there can be no case or controversy." Ms. Wright is incorrect, because whether or not there is a "case or controversy" is a different inquiry from whether her claim succeeds on the merits. Put differently, and as the Tax Court observed, Ms. Wright is confusing the jurisdiction of the Tax Court to review innocent spouse relief determinations with the requirements that Ms. Wright must satisfy in order to obtain that relief. Under I.R.C. Section 6015(e), the Tax Court has jurisdiction to grant or deny innocent spouse relief when (1) "a deficiency has been asserted" against a taxpayer; (2) she "elects to have [I.R.C. § 6015(b) or (c)] apply" or "requests equitable relief under subsection (f)"; and (3) she

### III.

We turn next to Ms. Wright's constitutional claim. Section 7443(f) of the Internal Revenue Code establishes that tax court judges may be removed by the President only "for inefficiency, neglect of duty, or malfeasance in office." I.R.C. § 7443(f). Ms. Wright claims that Section 7443(f) is unconstitutional under Article II of the Constitution and the separation of powers, and she asks this Court to "reverse the decision below and *either* strike Section 7443(f)'s for-cause limitation . . . *or* strike Section 7443(f) entirely . . . and grant Appellant new Tax Court proceedings before a different judge." However, Ms. Wright's constitutional challenge is unavailing today because even if we assume that Section 7443(f) is unconstitutional, she has not shown that she would be entitled to any relief on this basis. *See Collins v. Yellen*, 141 S. Ct. 1761, 1787–88 (2021). We therefore decline to reach the constitutional question that she raises.

"A fundamental and longstanding principle of judicial restraint requires that courts avoid reaching constitutional questions

---

timely "petition[s] the Tax Court . . . to determine the appropriate relief available to the individual." *Id*. § 6015(e)(1)(A). Absent among these jurisdictional provisions is a requirement that the taxpayer file a valid joint return, which is instead a necessary element for a claim for innocent spouse relief to succeed on the merits. *See id*. § 6015(a)(1), (b)(1)(A). Taking Ms. Wright's argument to its logical conclusion, every element of a claim would become a jurisdictional requirement. Here, the Tax Court properly found that it had jurisdiction to hear Ms. Wright's claim, and it had no obligation to determine whether she had filed valid joint returns with her husband as part of that finding.

in advance of the necessity of deciding them." *Lyng v. Nw. Indian Cemetery Protective Ass'n*, 485 U.S. 439, 445 (1988); *Ashwander v. Tenn. Valley Auth.*, 297 U.S. 288, 341 (1936) (Brandeis, J., concurring) ("Considerations of propriety, as well as long-established practice, demand that we refrain from passing upon the constitutionality of an act of Congress unless obliged to do so in the proper performance of our judicial function, when the question is raised by a party whose interests entitle him to raise it." (quoting *Blair v. United States*, 250 U.S. 273, 279 (1919))). Generally, when the constitutional issue is "a wholly academic question, in keeping with the judicial restraint principles of constitutional avoidance, we do not answer it." *Fort Lauderdale Food Not Bombs v. City of Fort Lauderdale*, 11 F.4th 1266, 1291 (11th Cir. 2021). Recognizing the "'great gravity and delicacy' of [the Court's] function in passing upon the validity of an act of Congress," *Ashwander*, 297 U.S. at 345 (Brandeis, J., concurring) (quoting *Adkins v. Child.'s Hosp.*, 261 U.S. 525, 544 (1923)), we "will not pass upon the validity of a statute upon complaint of one who fails to show that he is injured by its operation," *id.* at 347. Thus, a constitutional decision is particularly "unnecessary and therefore inappropriate," where "no additional relief would have been warranted" on the constitutional grounds. *Lyng*, 485 U.S. at 446.

The Supreme Court recently explained in *Collins v. Yellen*, 141 S. Ct. 1761 (2021), that in order to obtain relief based on an unconstitutional removal provision, a party challenging an agency's actions must show that the removal provisions "inflict[ed] compensable harm." *Id.* at 1789. In *Collins,* the Supreme Court

considered a claim brought by shareholders of Fannie Mae and Freddie Mac who alleged that the for-cause removal restriction for the director of the Federal Housing Finance Agency ("FHFA") violated separation of powers. *Id.* at 1770. The shareholders sought to void certain actions taken by the FHFA while the removal provision was in place. *Id.* at 1787. Although the Supreme Court determined that the shareholders had standing to bring a constitutional claim, *id.* at 1779, and that the for-cause removal restriction was unconstitutional, *id.* at 1787, it found that the FHFA's actions were not void because "[a]ll the officers who headed the FHFA during the time in question were properly *appointed*." *Id.* at 1787 (emphasis omitted).

The Supreme Court distinguished the removal provision at issue in *Collins* from other separation-of-powers cases where a party challenged a government actor's "exercise of power that the actor did not lawfully possess." *Id.* at 1788. The Court noted that if a federal official's actions lack constitutional authority, then those actions may be "void." *Id.* But, "[s]ettled precedent . . . confirms that the unlawfulness of the removal provision does not strip the [federal official] of the power to undertake the other responsibilities of his office." *Id.* at 1788 n.23. If a federal official is properly appointed, "there is no basis for concluding that" he "lacked authority to carry out the functions of the office" or that his actions are "void" simply because he was subject to an unconstitutional removal clause. *See id.* at 1788.

24-10563               Opinion of the Court                        13

In *Collins*, the Supreme Court observed, however, that there were circumstances in which an unconstitutional removal provision could inflict compensable harm. The Court offered two situations where a petitioner could make this showing. *Id.* at 1789. The first would be if "the President had attempted to remove [the federal official] but was prevented from doing so by a lower court decision holding that he did not have 'cause' for removal," and the second if "the President had made a public statement expressing displeasure with actions taken by [the official] and had asserted that he would remove [the official] if the statute did not stand in the way." *Id.* at 1789. In both circumstances envisioned by the Court, but for the removal restriction, the challenged action would not have occurred.

In *Rodriguez v. Social Security Administration*, 118 F.4th 1302 (11th Cir. 2024), we applied *Collins* in the face of a challenge to the for-cause removal provisions of administrative law judges ("ALJ") who serve in the Social Security Administration. *Id.* at 1305. We noted that under *Collins*, an "unconstitutional removal provision [does] not affect the underlying agency officials' authority to act, as it [does] not implicate appointment." *Id.* at 1314. In *Rodriguez*, there was "no question that the ALJ and the Appeals Council members . . . were properly appointed," and "nothing in the record . . . suggest[ed] . . . that the Commissioner or the President were considering dismissing or terminating the ALJ who adjudicated Mr. Rodriguez's case . . . but were prevented from doing so by the for-cause removal provisions." *Id.* at 1315. We concluded that we did not need to "address Mr. Rodriguez's separation of powers

challenge" because "[t]he alleged constitutional infirmity lies in the for-cause removal provisions, and Mr. Rodriguez has not pointed to any harm he suffered from [those provisions]. *Id.* Many of our sister circuits have applied *Collins* in a similar manner. *See e.g.*, *Calcutt v. Fed. Deposit Ins. Corp.*, 37 F.4th 293, 316 (6th Cir. 2022) ("*Collins* thus provides a clear instruction: To invalidate an agency action due to a removal violation, that constitutional infirmity must 'cause harm' to the challenging party." (quoting *Collins*, 141 S. Ct. at 1789)), *rev'd on other grounds*, 598 U.S. 623 (2023); *Kaufmann v. Kijakazi*, 32 F.4th 843, 849 (9th Cir. 2022) (holding that under *Collins* "[a] party challenging an agency's past actions must . . . show how the unconstitutional removal provision *actually harmed* the party— for example, if the President would have removed the agency's head but for the provision or, alternatively, if the agency's head 'might have altered his behavior in a way that would have benefited' the party." (quoting *Collins*, 141 S. Ct. at 1789)); *Cmty. Fin. Servs. Ass'n of Am., Ltd. v. Consumer Fin. Prot. Bureau*, 51 F.4th 616, 633 (5th Cir. 2022), *rev'd and remanded*, 601 U.S. 416, *and reinstated in part by* 104 F.4th 930 (5th Cir. 2024) ("Applying *Collins*'s framework, we conclude the Plaintiffs fail to show that the Act's removal provision inflicted a constitutional harm.").

In this case, however, Ms. Wright has not alleged any harm caused by Section 7443(f) that would entitle her to relief. She raised no arguments questioning whether the tax court judge was properly appointed or contending that he exercised power he did not lawfully possess when ruling on her case. Moreover, there is no sign in this record that any President ever attempted to remove

the tax court judge from office or expressed disapproval of his decisions. Nor has Ms. Wright shown any other causal relationship between Section 7443(f) and the Tax Court's ruling which she asks us to vacate. She does not even argue that there is a possibility there would have been a different decision in her case if Section 7443(f) was not in place.

In short, Ms. Wright has failed to demonstrate that the removal provision caused her any sort of "compensable harm." *Collins*, 141 S. Ct. at 1789. We decline to answer the constitutional question she raises because, even if she were correct, we would not be able to grant her any relief.

**AFFIRMED.**